JOSEPH BOYLE PRICE, Administrator of Estate of EMELINE G. BOYLE, v. SIDNEY E. BOYLE, Executrix of Will of WILBUR F. BOYLE, Appellant.

Division Two, April 7, 1921.

1. **EVIDENCE: Statement Called For by Memorandum.** Where a so-called declaration of trust recites that the maker has this day rendered the beneficiary and her daughter "a statement setting forth in full all assets of the estate, including the amount which appears in the probate court," such statement, submitted with the declaration of trust, is of equal value as evidence.

2. ——: ——: **Common Experience.** Where the executor of his father's will, which gave to the widow a life estate in all the property, had made four annual settlements which showed he had paid the widow an average of $1391.10 annually, and at the time of the final settlement, made eighteen months after the fourth settlement, he gave to her a written memorandum which recited he had received from her a receipt for $4,241.10, to be filed with the final settlement, "yet as a matter of fact I have not paid this amount of money to her, and have obtained her receipt simply for the purpose of closing up the administration in the probate court," and further recited that he had "this day rendered" to her and her daughter "a statement setting forth in full all the assets of the estate, including the above amount which appears in the probate court," reason and common sense must be allowed their common functions, if resort must be had to evidence outside the probate court to impeach the final settlement, and it is contrary to reason that the executor should have paid his mother nothing to live on during said eighteen months, and the "statement" mentioned in the declaration showing that during about six months of the eighteen he had paid her $762, the presumption must be indulged that he paid her a corresponding amount during the other twelve months, and there being no other evidence that he
287 Mo.—17

appropriated the $4,241.10 mentioned in the memorandum, his executrix cannot, after his and his mother's death, and nearly forty years after the final settlement, be charged, in a suit for an accounting brought on the theory that he was a trustee of an express trust, with the whole of said $4,241.10.

3. ———: Sale of Trust Property: Consideration Recited in Deed. A consideration recited in the trustee's deed conveying property to a purchaser is prima-facie evidence of the real consideration, and holds until the contrary is shown. But where the property in 1875 rented for about $1000 a year, which indicated a value of about $17,000, evidence that by 1890 the neighborhood had become bad, that the rents had decreased to $250 a year, and that it was in 1897 traded for other real estate, is some evidence that the recited consideration of $17,000 was not the real consideration, for it is a well known fact that, in trading real estate, the consideration mentioned in the deed is often not the cash value.

4. TRUSTEE: Accounting to Cestui Que Trust  A trustee in charge of trust property must account to his *cestui que trust*, and he is accountable on the termination of the trust at her death; and in a suit for an accounting brought against his executrix, it is significant that there is no showing that he did not account at the death of the *cestui que trust*, although he survived her four years; without such a showing, it is a matter of grave doubt whether plaintiff makes out a prima-facie case.

5. LACHES: Unreasonable Delay. Where a party rests upon his rights, and fails to bring a suit when he might have done so, for a period short of the period of limitations, in a proceeding in equity, relief may be denied on the ground of unreasonable delay, where circumstances intervene to work hardship upon defendant in making his defense. Where, by reason of delay, evidence becomes unavailable, or important witnesses have died and it becomes impossible to ascertain the facts, laches will bar recovery.

6. ———: ———: Accounting by Trustee. Where the administration of the estate closed in 1877, and the trustee, who was executor, if he appropriated any of the life estate, began to do so during that administration, and the *cestui que trust*, then sixty years of age, made no complaint; there was no complaint during the subsequent thirty years, but letters were introduced breathing the greatest confidence in him on the part of the *cestui que trust* and her daughter; there was no intimation that the mother during said thirty years was not entirely satisfied with his management of the estate; after her death in 1907, and his in 1911, all that remained to show the state of the account were the pub ic records and such statements as he had rendered his mother during her

Price v. Boyle.

lifetime; such statements in detail rendered during several years of his trust were produced in evidence, which indicates that other statements covering the rest of the time were rendered; her daughter had possession of all papers her mother possessed relating to the estate, and she testified that she destroyed most of those papers; no account book was presented; the suit for an accounting was brought by the administrator of the *cestui que trust* four years and 364 days after her death, and at the instigation of her daughter, who was disappointed in the provisions of the trustee's will, and was brought more than a year after his death; by the suit it is attempted to charge him with the consideration mentioned in a deed for real estate exchanged for other property, and the trustee alone could explain whether such named sum was the real consideration, and the only evidence that he had not accounted in full for the trust estate is the fragmentary papers which his sister had neglected to destroy when she destroyed the other statements rendered, it will be held that the suit is barred by laches.

Appeal from St. Louis City Circuit Court.—*Hon. A. B. Frey,* Judge.

REVERSED AND REMANDED *(with directions).*

*Boyle & Priest* for appellant.

(1) The suit must fail for lack of proof sustaining the charge and for laches. Hinchman v. Kelley, 54 Fed. 63; State ex rel. v. Collier, 15 Mo. 293; Ladd v. Stephens, 147 Mo. 342; 39 Cyc. 476; McCreery v. First Nat. Bank, 47 S. E. 890; Gee v. Hicks, Rich. (S. C.) Eq. Cases, 5; Chamberlayne on Modern Law of Evid., sec. 1219; Jones on Evid. (2 Ed.) sec. 12. (2) The legal presumptions are against the right of recovery. As length of time generally obscures evidence and deprives parties of the means of ascertaining the nature of the original transactions, it operates by way of presumption in favor of innocence and against the imputation of fraud. Alston v. Hawkins, 18 Am. St. 879, 888; Dixon v. Gourdin, 1 L. R. A. 628; Kellogg v. Dickinson, 1 L. R. A. 346; Beekman v. Hamlin, 10 L. R. A. 454; Foulk v. Brown, 2 Watts (Pa.) 209, 215; Bean v. Tonnelle, 94 N. Y. 381, 46 Am.

Rep. 153; 1 Jones on Evid. (Horwitz) secs. 65, 68, 78; Prevost v. Gratz, 6 Wheat. (U. S.) 481; 2 Notes on United States Reports, 92; Hinchman v. Kelley, 54 Fed. 63, 65; James v. James, 41 Ark. 301.

*Joseph H. Zumbalen* and *W. B. & Ford W. Thompson* for respondent.

(1) The land on McPherson Avenue, which is the basis of the first count of the petition, was obtained by W. F. Boyle by quitclaim deed from the widow, May 22, 1875, at which date the widow was the owner of a life estate therein under the provisions of the will of Joseph Boyle. The grantee in this quitclaim deed was her son, also a practicing lawyer and her sole and only legal adviser, and was at the time also the duly appointed and acting executor of the will of said Joseph Boyle, and as such had taken charge of this piece of real estate, together with the balance of the real estate belonging to the estate, from which he was collecting the rents, paying the taxes, also the allowed claims and expenses of administration, and reporting the same to the probate court, and claiming and being allowed a five per cent commission upon disbursements so made by him. He was, therefore, at the date of acquiring this property from the widow for an inadequate consideration of but five dollars, trustee of the express trust created by the will of his father, Joseph Boyle. Therefore the rules of law relative to a trustee of an express trust are applicable to such transaction. (2) As between the *cestui que trust* and the trustee the Statute of Limitations can never run. Davidson v. Davidson, 262 S. W. 493; Coal Co. v. Squier, 219 S. W. 693; Moulden v. Train, 199 Mo. App. 509, 204 S. W. 65; Ruby v. Barnett, 12 Mo. 9; Dillon's Admr. v. Bates, 39 Mo. 301; Elliott v. Machine Co., 236 Mo. 567; Case v. Goodman, 250 Mo. 114, 115; Canada v. Daniels, 175 Mo. App. 68; Dyers v. Waters, 46 N. J. Eq. 484; Oliver v. Piatt, 3 How. 411; Poe v. Domic, 54 Mo. 127; Newton v. Re-

benack, 90 Mo. App. 659; Smith v. Riceras, 52 Mo. 582; Goodwin v. Goodwin, 69 Mo. 621; Butler v. Lawson, 72 Mo. 249. (4) Laches and the Statute of Limitations are both affirmative defenses, and if intended to be interposed as such, must be pleaded, and the facts relied upon as constituting such defense must be stated. The pleadings in this case show no such defense. (5) All agreements or contracts between trustee and *cestui que trust* are looked upon with suspicion by the court and are closely scruntinized. Therefore, in order that a release, confirmation or acquiescence may have any effect, the *cestui que trust* must be shown to have had full knowledge of all the facts and circumstances of the case; he must also know the law and what his rights are, and their value, and how they would be dealt with by the court. 2 Perry on Trusts & Trustees (6 Ed.), pp. 1394, 1395, and cases under Point 2. (3) In order to bind a *cestui que trust* by acquiescence in a breach of trust by the trustee, it must appear that the *cestui que trust* knew all the facts and was possessed of his legal rights and was under no disability to assert them. Such proof must be full and satisfactory. The *cestui que trust* must be shown, in such case, to have acted freely, deliberately and advisedly, with the intention of confirming a transaction which he knew, or might or ought with reasonable or proper diligence to have known, to be impeachable. His acquiescence amounts to nothing if his right to impeach is concealed from him, or if a free disclosure is not made to him of every circumstance which it is material for him to know. Garesche v. Levering Inv. Co., 146 Mo. 436; Newton v. Rebenack, 90 Mo. App. 650; Bank v. Kennett Estate, 101 Mo. App. 370; White v. Sherman, 168 Ill. 605; 1 Bigelow on Fraud, pp. 315, 316; 2 Perry on Trusts and Trustees (6 Ed.), pp. 1394-5; Butler v. Lawson, 72 Mo. 249; Chouteau v. Allen, 70 Mo. 343; Rutter v. Carothers, 223 Mo. 640; Perry on Trusts and Trustees (6 Ed.), sec. 850, p. 1393.

WHITE, C.—This is a suit in equity, and as originally filed the bill was in two counts: In the first count the plaintiff sought to set aside a certain deed executed in May, 1875, wherein the plaintiff's intestate conveyed certain property to the defendant's testator; the second count demanded an accounting of the trusteeship of Wilbur F. Boyle, deceased, concerning certain property which it is alleged he held in trust for plaintiff's intestate.

By consent of the parties William B. Homer was appointed referee to try the issues involved. It was stipulated that he should take the evidence, but make no finding of facts. Accordingly the referee took the evidence, reported the same, and upon the consideration of that evidence the trial court rendered judgment for the defendant on both counts, Judge F. L. English, being judge. Subsequently a motion for new trial was filed, and at that time Judge A. B. Frey had succeeded Judge English. Judge Frey overruled the motion as to the first count, and sustained it as to the second count. From that order sustaining the motion for new trial on the second count the defendant appealed.

Emeline G. Boyle was the widow, and Wilbur F. Boyle the son, of Joseph Boyle, deceased. Joseph Boyle died in 1872, leaving a will in which he appointed Wilbur F. Boyle his executor. He had two other children—Leonidas H. Boyle, a son, and Virginia, a daughter. At the time of her father's death Virginia was the wife of William M. Price; previously, she had been married to one McDonald, who died in 1868. The defendant, executrix, is the daughter of Wilbur F. Boyle, deceased. It is claimed by plaintiff that Emeline G. Boyle was devised a life estate in all the property, real and personal. Wilbur F. Boyle, executor, appears to have treated the estate as if his mother had a life interest in all the property; the case was tried on that theory, so it is unnecessary to set out the will.

Emeline G. Boyle died June 11, 1907; Wilbur F. Boyle died in March, 1911; this suit was filed on the tenth day of June, 1912, five years, lacking one day, from the death of Emeline G. Boyle.

It is claimed by the plaintiff that Wilbur F. Boyle was the trustee of an express trust, having charge of all the interest and estate of his mother in Joseph Boyle's property. This is disputed by defendant, but for the purpose of this case it may be conceded that he was such trustee, and acknowledged himself as such in writing by executing in 1877 what is claimed to be a declaration of trust. The case may be treated then as one in which Emeline G. Boyle, the plaintiff's intestate, had a life interest in all the property, real and personal, left by Joseph Boyle, deceased, at his death in 1872. Wilbur F. Boyle took charge of and managed the property as trustee, and was accountable to the *cestui que trust* for the income arising from the property during the life of his mother, the trust terminating on her death in 1907.

The inventory of Joseph Boyle's estate filed by the executor showed personal property, consisting mainly of notes, amounting to $6,103.02, and seven pieces of real estate. This inventory of the estate was filed September 18, 1872. The executor thereafter filed four annual settlements in the Probate Court of St. Louis, the first in September, 1873; the second in July, 1874; the third in June, 1875; the fourth in June, 1876; and a final settlement sworn to December 31, 1877, was filed January 15, 18.8, about eighteen months after the fourth annual settlement. These annual settlements show the amounts of rents and interest received by the executor, and the amounts paid to the widow during the period of administration up to the fourth annual settlement. At the first annual settlement the executor took credit for $2220 60 paid to the widow Emeline G. Boyle on the second annual settlement he took credit for $1206.40; in the third, for $1351.30 and in the fourth for $1786.10. In the final settlement, executed D ember 31, 1877, there is this entry: "By am unt paid Mrs. F. G. Boyle who is, under the will of deceased, entitled to the estate during life, $4241.10." That credit, after accounting for all other receipts and disbursements, balances the estate, showing no property in the executor's hands. December 26, 1877, three days be-

fore he swore to his final settlement, he executed the following document:

"This memorandum witnesseth, that whereas I have this day received from Mrs. E. G. Boyle her receipt to be filed with my final settlement of the estate of Joseph Boyle, deceased, for the sum of $4,241.10, yet as a matter of fact *I have not paid this amount of money to her,* and have obtained her receipt simply for the purpose of closing up the administration in the probate court. This amount, together with the other assets of the estate of Joseph Boyle, are held by me as trustee or agent with the consent of Mrs. E. G. Boyle and of my sister, Mrs. Virginia Price, and I am to pay the income from the property to Mrs. E. G. Boyle during her life, and upon her death to divide the remainder between my said sister and myself as directed by the will of Joseph Boyle, deceased. I have this day rendered to Mrs. E. G. Boyle and Mrs. Virginia Price *a statement setting forth in full all of the assets of the estate, including the above amount which appears in the probate court,* all of which assets are in my hands for the purposes above mentioned.

WILBUR F. BOYLE.

"St. Louis, December 26, 1877."

We have italicized some parts of the document which seem significant. He had sold all the real estate except three pieces, and had on hand, not shown in the final settlement, as the proceeds of such sale, $9,706 in cash, notes representing deferred payments from the sale of real estate $2,200, and one share of Biddle Market stock $25. The plaintiff adds to these amounts the $4241.10 mentioned, marking a total of $16.172.10, and seeks to charge the estate of Wilbur F. Boyle with that amount, and interest on it from the time of final settlement in 1877 to the time suit was filed in 1912. Of the three pieces of real estate remaining in the hands of the executor, two were sold and conveyed together, June 1, 1895, for a recited consideration of $3,500. The other piece of real estate was sold in 1897, and conveyed for a recited consideration of $17,000. The plaintiff takes these two

sums, $3500 and $17,000, recited in the deeds charges the amount to the trustee, Wilbur F. Boyle, with interest on same from the dates of the deed until the filing of the suit.

No books or accounts were discovered satisfactorily showing the moneys received and disbursed by Wilbur F. Boyle while he was acting in the alleged capacity of trustee, but he presented to his mother from time to time statements of his accounts, as trustee, some of which were introduced in evidence. The plaintiff, administrator, is the son of Virginia Price, and she would be the principal beneficiary in any proceeds resulting from this suit. Her mother lived with her for many years prior to her death, though perhaps not continuously. Mrs. Price had possession of all the papers her mother possessed relating to the estate. She testified that she destroyed most of those papers, and what were rescued from the destruction were turned over to Mr. Laurie for examination after Wilbur F. Boyle's death. She did not know what sort of papers were destroyed, nor what papers she turned over to Mr. Laurie. She claimed to be extremely ignorant of business matters in general and knew nothing about the business transactions connected with the estate; she trusted everything to her brother, and never suspected that anything was wrong with the estate until after her brother's death in 1919. She admitted she was disappointed by the provisions of his will, and on account of that disappointment started some investigations which aroused her suspicions and caused her to have an administrator of her mother's estate appointed, and this suit to be brought.

Among the papers rescued in the general destruction was a statement of moneys belonging to Joseph Boyle's estate received and expended by W. F. Boyle from May, 1872, to July 2, 1875; also a statement covering the period from May 12, to December 26, 1877; also one for the period from December 31, 1877, to July 1, 1879; one for the years 1880, 1881 and 1882, and one for the years 1883 to 1890, inclusive. No statements

were rescued showing what was received and expended between the periods mentioned, or what was received or disbursed after 1890. What was received and disbursed during these periods is largely conjectural.

The plaintiff proceeds to charge the estate of Wilbur F. Boyle with the amounts above mentioned as in his hands at the final settlement of his father's estate, with the amounts acknowledged by him in those statements handed his mother, to have been received, with the recited considerations in the two deeds mentioned, and gives him credit for no payments or expenses during all the time except those proven, and by dint of figuring brings out the estate of Boyle indebted to the plaintiff's intestate in an amount exceeding fifty thousand dollars.

The defendant employed an expert accountant to go over the matter, and this expert, by making certain estimates and by taking into account entries in the diary of Wilbur F. Boyle, which was found among his papers and the stubs of his check books, reached the conclusion that the estate was indebted to him at the time of his mother's death in an amount of nearly eight thousand dollars; that is, he had overpaid his mother that amount. It is likely that some of the figures fixed by the accountant were not proper charges against the beneficiary, and for some estimates he had no certain basis. All of which shows the difficulty of ascertaining the true state of the account at the time of the trial, after the two parties who knew most about it, Wilbur F. Boyle and his mother, were dead.

I. At the death of Emeline G. Boyle in June, 1907, the so-called trust terminated and the administrator of her estate, if he had been appointed at that time, could have demanded of Wilbur F. Boyle that he account in all particulars and show in what **Prima-Facie Case.** manner he had executed his trust; but in order to maintain a suit it would have to be shown that he had not accounted to his mother in her

lifetime, for all her property in his hands. The proceeding at that time would have saved the embarrassment caused by Wilbur F. Boyle's death. During the four years which elapsed between his mother's death and his own, he was in position to account strictly for everything that took place in the management of the trust property. After his death, however, the only evidence which would show whether or not he had accounted, and, if not, in what manner he had discharged his trust, were papers and records left, many of which possibly were destroyed by Mrs. Price.

The plaintiff assumes that in the absence of proof the defendant should not be credited with any payments, notwithstanding the unsatisfactory condition of the evidence and the manifest lack of evidence which once existed. He starts out with charging defendant's testator with an account, as follows:

"Personal estate as shown by final settlement and declaration of trust ....................... $4241.10

"Proceeds of real estate actually collected   9706.00

"Proceeds of real estate, deferred payment, represented by two notes ................... 2200.00

"One share of Biddle Market stock ...... 25.00

"Total . . . . . . . .   $16,172.10"

He also assumes that Boyle's final settlement is *conclusive* against him. If it is conclusive he should have credit for $4241.10, for which he filed his mother's receipt. The plaintiff, however, discards his own assumption and resorts to other evidence to show that he did not pay her that money. He resorts to the so-called declaration of trust, above set out, in which Wilbur F. Boyle stated he did not pay her "that amount of money," but that he held it as "trustee or agent." That same paper says further that Boyle has *"this day rendered to Mrs. E. G. Boyle and Mrs. Virginia Price a statement setting forth in full all the assets of the estate, including the amount which appears in the probate court."* That statement, submitted with the dec-

laration of trust, is of equal value as evidence. It shows the amount due the estate was $14,656, which is over $1500 less than plaintiff charges him with. Plaintiff, however, in looking for evidence to overthrow the final settlement, ignores the very evidence which shows the trustee had in fact paid his mother a large part of that $4241.10, for which she gave her receipt. In the final settlement made in December, 1877, he did not take credit for any money paid his mother after the fourth annual settlement, filed eighteen months before, unless it was included in that sum. Yet, during each previous year he had paid her a large sum as shown by his annual settlements, as follows:

At first annual settlement filed September 23, 1873 ...............................$ 2220.60

At second annual settlement filed July 15, 1874 ......................................... 1206.40

At third annual settlement filed June 28, 1875 ......................................... 1351.30

At fourth annual settlement filed June 30, 1876. ................................. $1786.10

Total . . . . . . . . . . $ 6564.40

An average per year of ..................$ 1391.10

It is absolutely unreasonable to conclude that after paying his mother, yearly, sums like that up to the fourth annual settlement, he then absolutely ceased to pay her anything whatever for over eighteen months until the final settlement. If resort must be had to evidence outside the probate record to impeach the final settlement, reason and common sense must be allowed their common functions. That the executor should have paid his mother nothing to live on during eighteen months is not only contrary to reason, but in the statement which he handed her at the time he gave her the "declaration of trust," December 26, 1877, he shows that he had paid her sums of money every month from May 14, 1877, to December 26, 1877, amounting altogether to $762.50 for the last six months of the period. The plaintiff, however, chooses to ig-

nore that part of the statement as modifying the
amount which he seeks to charge. It is to be noted
that, in the statements rendered by Wilbur F. Boyle
to his mother, that particular period from the fourth
annual settlement in June, 1876, to May, 1877, was not
covered by the papers rescued from destruction. The
account during that period, if it had been recovered,
together with the payments listed in the last half of the
year 1877, probably would show exactly how much of
the $4241.10 had been actually paid at that time and how
much was remaining in his hands. Since the statement
showed that he had paid out $762 during the last half of
the year 1877, it is likely that he paid a proportional
amount during the year preceding. The interpretation
of the ''declaration of trust'' to mean that Boyle had
all the $4241.10, cannot be correct because modified by
the statement submitted with it. The statements which
Wilbur F. Boyle rendered his mother were in her pos-
session all the time until her death and afterwards in
the possession of Mrs. Price until she saw fit to destroy
papers which probably included portions of them.

Thus the plaintiff, beginning without sufficient evi-
dence by charging the defendant with a sum largely in
excess of what Wilbur F. Boyle had in his hands at that
date, charges him with compound interest on it for thirty
years.

There is another particular in which the plaintiff
assumes a gross sum of money in Wilbur F. Boyle's
hands; when in 1897 he conveyed the last tract of land
for a recited consideration of $17,000. It is true the re-
cited consideration in the deed is prima-facie evidence
of the real consideration, and holds until the contrary
is shown. That was the old home place of Joseph Boyle,
it seems. In 1875 it rented for $86 a month, and con-
tinued to rent at that rate for some time thereafter,
but it began to deteriorate in value because of con-
ditions in the neighborhood. It got to be a disrepu-
table neighborhood so that it could scarcely be rented.
The rents, as stated by Wilbur F. Boyle, prior to 1890

showed a steady decline. The total rents in 1888 were something over $700; in 1889, something over $250; in 1890, the first six months, about $120. Mrs. Price in her testimony said that it couldn't be rented to good people, and her mother would not allow it to be rented to people who would pay a good price; the neighborhood had become very bad. It must have been, then, that the property depreciated in selling value along with the rental value. No one would pay a large price for it, either to live in or to rent. The rental of about a thousand dollars a year, paid during the early years of the trust, would probably indicate a value of $17,000; possibly the property might have been sold at that time for that price. At the time it was sold in 1897, if rents had continued to decline, it probably did not rent for enough to pay the taxes. It is highly improbable that it was worth anything like the amount recited in the deed. There is some evidence to indicate that the property was traded for other real estate. What became of the other real estate is not shown. It is a well known fact that, in trading real estate, often it is not cash values which are mentioned as the consideration in the deed. So there is some evidence to indicate that the consideration recited in the deed is not a correct one.

A trustee in charge of property must account to his *cestui que trust,* and Wilbur F. Boyle was accountable on the termination of the trust at the death of his mother. But it must be shown that he had not accounted at that time.

Taking all these things into consideration on th state of the evidence here, we might say it is such as to give rise to great doubt whether the plaintiff has made out a prima-facie case on the facts, a matter that might be considered more fully and would require a completer analysis of the evidence, but for the point to be noted in the next paragraph.

II. This suit was brought four years and three hundred and sixty-four days after the termination c

the trust.   Laches is urged as a defense.   Where a party rests upon his rights, and fails to bring suit when he might have done so, for a time short of the perio of limitations, in a proceeding in equity, the courts sometimes deny relief on the ground of an unreasonable delay, where circumstances intervene to work hardship upon the defendant in making his defense.   Where, by reason of delay, evidence becomes unavailable, or important witnesses have died and it becomes impossible to ascertain the facts, laches will bar recovery.   [Casebolt v. Courtney, 195 S. W. 746, and cases cited.]

In the present case there was no suspicion at any time during the life of Wilbur F. Boyle that he was not faithfully discharging his duties as trustee; that he did faithfully discharge them during the five years' administration is not now in dispute. Not only was there no complaint during the subsequent years, but letters were introduced in evidence breathing the greatest confidence in him on the part of his sister and his mother. There was no intimation anywhere that his mother during her life was not entirely satisfied with his management of the estate.   After his death no witness who knew the facts remained alive.   All that remained were the public records and such statements as he had rendered to his mother.   That he rendered such statements in detail during several years of his trust indicates that other statements were rendered covering the rest of the time, which in all probability were destroyed at the time Mrs. Price committed to destruction the papers in her possession—the best evidence then available to show whether or not Boyle had accounted for his trust.   The strong probability, almost certainty, that he paid his mother large sums of money between the fourth annual settlement and the final settlement, for which the plaintiff gives no credit, indicates that at other intervals between his statements as preserved, he made similar accounting.   The trustee, had he been alive, could have explained all that.

The recital in the last deed for $17,000, is prima-facie correct, and the only person who certainly kne~ whether it was correct or not was Wilbur F. Boyle himself. The fact that he was dead rendered that evidence unavailable. There were several circumstances indicating that such was not the consideration paid in cash.

All these circumstances, which place upon the defendant the burden of making proof after the plaintiff has waited until that burden cannot be sustained, because the proof is destroyed, furnish reasons for applying the doctrine of laches. It is true Mrs. Price testified she had no reason to suspect anything wrong until after her brother's death when, on account of dissatisfaction with his will, an investigation of his papers led to discoveries. The discoveries, however, are shown in the fragmentary papers which she neglected to destroy. These, as we have seen, do not warrant the conclusion which plaintiff has drawn from them, and we are not at liberty to say that these alleged discoveries would warrant Mrs. Price in assuming a different state of mind in regard to the matter from that she maintained during the life of her brother.

The respondent urges as a reason why laches should not be imputed to him and his intestate, that Emeline G. Boyle placed the utmost confidence in her son, was ignorant of business, and did not know or suspect that his accounts were incorrect or irregular in any manner. At the time of the final settlement which occurred thirty years before her death, she must have been in full possession of all her faculties; something over sixty years of age—the time of life when a woman's knowledge of business and property affairs is often at its best. She had received from her son, trustee, the income from the estate amounting on an average to nearly fourteen hundred dollars a year, for four years, then suddenly she received nothing for a period of eighteen months from the fourth annual settlement until the final settlement; on respondent's theory, a trifling neglect of that sort escaped her notice. She lived that eighteen months

Germo Mfg. Co. v. Combs.

without anything to live on without being aware that she was living on nothing, and for thirty years it was never brought to her attention. It remained for her administrator, thirty-five years afterwards, to dig up evidence of her destitution during that period, from the remnant and shreds of papers, most of which had been destroyed.

The judgment is reversed and the cause is remanded with directions to the trial court to set aside the order granting a new trial on the second count, and to reinstate the judgment as originally entered. *Mozley, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.