ANNA F. THOMASON, MARSHALL THOMASON and KATHERINE THOMASON, his wife, and MARY B. TERRY, Appellants, v. JOHN A. BEERY, EDWIN R. BEERY and ELSIE BEERY, his wife, FRANCES BERNADINE BEERY, a single woman, and FRANCES BERNADINE BEERY, Administratix of Estate of F. R. BEERY, Deceased, ETHEL M. EDMONDS, and NEAL EDMONDS, her husband, ELIZABETH (BETTY) RAY TYSON and ALLEN TYSON, her husband, Respondents, No. 41844—235 S. W. (2d) 308.

Division One, December 11, 1950.

Rehearing Denied, January 8, 1951.

*Horace G. Pope, C. W. Prince* and *Robert F. Sevier* for appellants.

426

*Simrall & Simrall* and *James S. Simrall, Jr.,* for respondents.

[308]  HOLLINGSWORTH, J.—This is a suit in equity to obtain a decree declaring the title of defendants to 175 acres of farm land in Clay County, Missouri, to be held in trust for the use and benefit of plaintiffs, and for an accounting by certain of the defendants of farm rentals alleged to have been collected by their father, F. R. Beery, as agent for plaintiffs.  The chancellor found the issues in favor of defendants and plaintiffs appealed.

The farm was owned by George E. Thomason at the time of his death in 1922.  He was survived by his wife, Fannie, and four children, Anna, Marshall, Mary and Mae.  Three of these children, to-wit: Anna, a single woman, Marshall (joined with his wife,

Katherine,) and Mary (whose husband is Clarence D. L. Terry) are plaintiffs. The principal defendants are the children of George Thomason's daughter, Mae, and her husband, F. R. Beery, both deceased. One of these defendant children, Frances Bernadine Beery, is also joined as a party defendant in her capacity as administratrix of the estate of her deceased father, F. R. Beery, who was a resident of Leavenworth, Kansas, at the time of his death. The spouses of such [309] of these children as were married are also nominally joined as defendants.

Briefly summarized, plaintiffs' petition alleges that upon the death of George E. Thomason in 1922, Mae's husband, F. R. Beery, took possession of the farm and thereafter operated it as agent for Mr. Thomason's widow, Fannie Thomason, who died December 2, 1929, and the four Thomason children until his, Beery's death on December 13, 1946, pursuant to an agreement between the parties in interest that all rentals accruing therefrom would be applied to taxes, upkeep of the farm and payment of the principal and interest accruing on a certain promissory note secured by deed of trust on the land; that, while pretending to apply said rentals to the payment of the obligations aforesaid, Beery fraudulently conspired and contrived to provoke a foreclosure of the deed of trust by defaulting in the payment of interest accruing thereon, as a result of which default the farm was sold in foreclosure on October 11, 1939, to W. W. Payne and Lee W. Grant, who took title under a secret trust and as straw men for Beery; that thereafter, on December 19, 1939, the farm was deeded to F. R. Beery and Mae Beery, his wife, who thereafter secretly held the title, while Beery continued to represent to plaintiff heirs that he was continuing to act as their agent and applying rentals to the obligations aforesaid; that plaintiffs had no knowledge until after F. R. Beery's death that the land had been sold in foreclosure; that Beery had collected in excess of $15,000 in rents and profits from the farm, for which he had not accounted; and that defendants as heirs of F. R. Beery and Mae Beery had succeeded to these wrongfully acquired assets. The prayer was for an accounting and that defendants be declared to hold title to the real estate in trust for plaintiff, and that plaintiffs recover all rents and profits from said real estate and that partition of the real estate be had in accordance with the interests of the respective parties.

This being a suit in equity, we are enjoined with the duty of reviewing the evidence, determining its value and weight and, with due deference to the conclusions of the chancellor, making our own decision on the merits. Klatt v. Wolff, 173 S. W. 2d 933, 936; Edinger v. Kratzer, 175 S. W. 2d 807, 813.

At the time of Mr. Thomason's death, there was a mortgage indebtedness against the real estate in the principal sum of approx-

428

imately $6700. By agreement of all the parties, F. R. Beery took possession of the farm and operated it as agent for Mrs. Thomason (until her death in 1929) and the four children until, plaintiffs contend, his death in December, 1946, and defendants concede until the foreclosure sale in 1939.

On January 2, 1928, nothing had been paid on the principal indebtedness, but apparently interest and taxes were not in default. On that day Mrs. Thomason and the four children and their respective spouses refinanced the debt by executing a new promissory note for the principal sum of $6700, payable to the order of George Chrisman, due five years after date, with interest at six per cent per annum, compounded annually if not paid annually, which was secured by deed of trust on the farm. And F. R. Beery, with the consent of all parties in interest, continued to operate the farm and collect the rentals thereon. The record does not affirmatively show, but circumstances appearing therein lead to the conclusion that the children of Mr. Thomason were adults at the time of his death and they certainly were in 1928.

This promissory note shows on the back thereof that the following payments were made: In 1929, $406.23; in 1930, $407.23; December 29, 1930, $402.00; September 9, 1932, $414.25; August 23, 1933, $412.22; March 12, 1934, $405.00; in 1935, $419.06; in 1936, $421.84; and on June 14, 1937, $110.00. The aforesaid sums were credited to interest. No payments were made on principal.

Sometime prior to October 16, 1937, the payee of the note endorsed it to one Frank Hughes, who died on or about that date. The inventory of his estate on file in the probate court shows that on October 16, 1937, there was due on the note in principal [310] and interest the total sum of $7295.16. The inference is drawn that Frank Hughes bequeathed it to Christian College. At any rate, on September 24, 1939, Lewis B. Dougherty and James S. Simrall, executors of the estate of Frank Hughes, deceased, endorsed the note to W. W. Payne and Lee W. Grant, who thereafter held the note as trustees for Christian College, Columbia, Missouri. After due advertisement in the Liberty Tribune, the deed of trust securing the payment of the note was foreclosed on October 11, 1939, and Payne and Grant purchased the land as trustees for the college for the sum of $3500. On December 19, 1939, Payne and Grant conveyed the property to F. R. Beery and Mae Beery, husband and wife, by warranty deed for a consideration of $5000, $1800 of which purchase price was paid in cash and $3200 of which was paid by F. R. Beery and Mae Beery through a loan obtained for them by S. T. Kelly, President of the Kearney Trust Company.

There was a total failure of proof that the foreclosure was connived at by Payne and Grant or that they took title as straw men. They took and held title to the note as trustees for Christian

College. Default had been made in payment of both principal and interest. The sale in foreclosure was in good faith and properly advertised in the Liberty Tribune. Payne and Grant in good faith purchased the property at the foreclosure sale for the benefit of the college for the sum of $3500. Plaintiffs no longer question these facts, but now seek to establish that when F. R. Beery and his wife, Mae, purchased the land from Payne and Grant, as trustees of Christian College, in December, 1939, they should be held to have purchased it in trust for the use and benefit of all the Thomason heirs. This theory, presumably, is based upon the idea either that the purchase price of the land, which was $5000, came from rentals paid to Beery as manager of the farm from the time of Mr. Thomason's death until the foreclosure on October 11, 1939, or that by fraudulently withholding payment of principal and interest as it accrued, F. R. Beery purposely "provoked" foreclosure in order to thereby obtain title to the farm.

The facts, however, refute the first theory to the extent, at least, of $3200 of the purchase price of the land. The documentary evidence revealed that F. R. Beery and his wife paid $1800 of the purchase price in cash and borrowed $3200 from Miriam and Della Rowell, payment of which was secured by deed of trust on the farm. The total price of $5000 was paid to Christian College. Beery had paid $200 on the Rowell note prior to his death, and $200 was paid subsequent to his death, leaving $2800 principal still due on the indebtedness owing the Rowells at the time of the trial. The evidence does not reveal how or where Beery obtained the money used in making the initial cash payment of $1800 or the two subsequent payments of $200 each.

Plaintiffs' evidence in support of their allegation that Beery had collected in excess of $15,000 of rentals for which he had not accounted was meager. As is usual, the estimates of rental value varied considerably. There was evidence that in 1921 and 1922 the farm had been rented for $1600 cash rental. A witness, who lived on a farm across the road from the Thomason land, gave it as his estimate that the fair cash rental of the farm from 1922 to the date of the trial in 1949 would be $1000 per year. In fixing that estimate, he took into consideration that rentals were high in the nineteen-twenties and lower in the nineteen-thirties. He admitted that times were hard in the nineteen-thirties and farm rentals were not as high as in the nineteen-twenties. He further conceded that "he went broke" in the nineteen-thirties in operating his farm which lay across the road, and that many farmers "went broke" between 1928 and the latter nineteen-thirties, and that "there were lots of foreclosures." One witness testified in behalf of plaintiffs that he rented the Thomason farm from 1933 until 1945 on a

"50-50 basis". He said he kept records, but they were lost. He estimated that the total crops for the first five years of that period amounted to a gross of $5000 per annum and the remaining six years at a gross of $7000 per annum, one-half of which went to Beery as rent. It is not clear, but, presumably, these figures [311] were his estimates of annual income for the years covered by his testimony. He admitted on cross-examination, however, that when the land was sold in foreclosure in 1939 it was "run down" and its value was only $30 per acre. A witness testified in behalf of defendants that he did not believe the rentals from the farm would have averaged $1000 per year for the past twenty-five years.

There was no evidence, by estimate or otherwise, as to the amount of taxes, insurance, upkeep, or other expense or outlay incident to the operation of the farm. Hence, it would be only by surmise that a court of equity could come to the conclusion that Beery had misappropriated any rentals received by him. The note shows that from March, 1929 to June 14, 1937, a total of $3397.83 was paid, an average of over $400 per year. If the estimate of $1000 as the average rental is accepted as substantially correct, then the payments of approximately $400 each year on the note, which would represent the net value of the rentals after deduction of taxes, insurance and other expenses, do not seem unreasonably small.

When the indebtedness of $6700, which was a lien against the farm at the time of Mr. Thomason's death, was renewed in 1928, all of the parties in interest and their respective spouses signed the note. No question was raised as to the application of rentals to the indebtedness although they all knew the principal indebtedness had not been reduced.

Plaintiffs contended they were in total ignorance until after Beery's death in December of 1946 and Mrs. Beery's death in March of 1947 that the land had been sold in foreclosure and that Mr. and Mrs. Beery had become the record owners thereof. Mary Thomason Terry's husband and their daughter testified that in 1945 F. R. Beery said he was tired of managing the farm and wanted to sell it and divide the proceeds among the heirs.

Aside from this testimony, there was no evidence of secrecy on the part of F. R. Beery and Mae Beery that the land had been sold in foreclosure in October, 1939, or that they had purchased it from Payne and Grant in December, 1939. Plaintiff Anna Thomason lived and worked in the city of Liberty during the time the sale was being advertised in the Liberty Tribune. The tenant on the farm testified he knew of the foreclosure. Mr. Kelly, President of the Kearney Trust Company, knew of it. The trustee's deed to Payne and Grant was promptly recorded. The deed from them to F. R. Beery and Mae Beery was acknowledged on the 22nd day of December, 1939, and recorded on the 17th day of January, 1940.

It is worthy of note that from 1922 until 1947, and after the death of both F. R. Beery and Mae Beery, a period of twenty-five years, not one of the plaintiffs questioned Beery's honesty or was impelled to inquire whether the debt was being liquidated or whether there was any profit accruing from the farm. And, too, the fact that suit was not brought until after the death of both F. R. Beery and Mae Beery is a circumstance of evidentiary value. Plaintiffs have not shown such diligence as would appeal to the conscience of a court of equity.

" 'Courts of equity view with disfavor suits that are brought long after the transactions litigated have occurred, and long after death has sealed the lips of those familiar with occurrences so remote in point of time.' [Burdett v. May, 100 Mo. 13, l. c. 18, 12 S. W. 1056. See also McKee et al. v. Downing, 224 Mo. 115, l. c. 144, 124 S. W. 7; Price v. Boyle, 287 Mo. 257, l. c. 271, 229 S. W. 206.]" St. Louis Union Trust Co. v. Busch, 346 Mo. 1237, 1245, 145 S. W. 2d 426, 431.

Plaintiffs seek to take the farm here involved from defendants who concededly are innocent successors in title to F. R. Beery and Mae Beery and to compel them to account also for alleged defalcations of F. R. Beery. Their contention is that defendants were unjustly enriched by the fraudulent acts and connivance of F. R. Beery, and that by reason thereof a constructive trust arose which they may enforce against any successor in title except innocent purchasers for value. Such a [312] trust is based upon fraud, actual or constructive. Suhre v. Busch, 343 Mo. 679, 123 S. W. 2d 8, 15; Lucas v. Central Missouri Trust Co., 350 Mo. 593, 166 S. W. 2d 1053.

Fraud is never presumed. "This [proof of fraud] cannot be done by mere inference, but must be proved; and if the facts shown are equally consistent with an honest purpose, fraud will not be inferred. * * * Perhaps this principle has not been better nor more conservatively expressed than in the following language of Judge Brace in Garesche v. MacDonald, supra:

" 'While fraud may be inferred when it is a legitimate deduction from all the facts and circumstances in evidence in a given case it is never to be presumed, and when a transaction under consideration may as well consist with honest and fair dealing as with a fraudulent purpose, it is to be referred to the better motive.' " Ulrich v. Pierce, 233 S. W. 401, 402. See also Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S. W. 2d 611, 616.

The evidence to establish a constructive trust must be so clear, cogent, unequivocal and positive as to banish doubt from the chancellor's mind. Tichenor v. Bowman, 133 S. W. 2d 324; Strype v. Lewis, 352 Mo. 1004, 180 S. W. 2d 688, 155 A. L. R. 99; Maguire

432

v. Wander, 193 S. W. 2d 900; Blick v. Nickel Sav., Inv. & Bldg. Ass'n, 216 S. W. 2d 509.

Upon full consideration of all the facts and circumstances in evidence, and with due deference to the conclusions of the chancellor, we are not persuaded that the evidence shows any wrong-doing or defalcation on the part of F. R. Beery or Mae Beery.

Finally, plaintiffs argue in their reply brief that F. R. Beery and Mae Beery took title to the land at the foreclosure sale and that Beery, being the husband of a tenant in common, should be held to have acquired the title for the benefit of all the tenants in common, and that such is the rule regardless of fraud. In support of this contention they cite Grumley v. Webb, 44 Mo. 444. This argument is a change of front, but, in any event, it is without merit, because it is not based on facts. F. R. Beery and Mae Beery did not, either directly or indirectly, purchase the land at the foreclosure sale. It was purchased by Payne and Grant, as trustees for Christian College, for less than the amount of the indebtedness against it. When they had so purchased it, none of the heirs of George Thomason thereafter had any title or equity of redemption therein. All of them, including Beery and his wife, were strangers to the title. The estate was exhausted; the trust ended; and F. R. Beery and Mae Beery were as free to acquire the title as any other strangers.

The judgment is affirmed. All concur.