Walter REBMANN, Respondent,

v.

Barbara Ernestine REBMANN et al.,
Appellants.

No. 50443.

Supreme Court of Missouri,

Division No. 2.

Nov. 9, 1964.

Rehearing Denied Dec. 14, 1964.

Lay & Ichord, Hiett & Becker, Houston, for ·respondent.

Green & Green, H. D. Green, West Plains, for appellants.

PRITCHARD, Commissioner.

Upon the theory of lack of delivery plaintiff sued to set aside his admittedly properly executed and acknowledged warranty deed· which granted to his four grandchildren, all minors at the time of execution of the deed, his 110 acres of land (to which he also prayed to have the title quieted) then owned by him.

The decree of the trial court was for plaintiff, and held that the deed in question was "void for the reason that there was no effectual valid delivery thereof." Title to plaintiff's land was also quieted by the decree. Defendants' cross action in which they requested that their title be quieted as against plaintiff was denied. Defendants have appealed from the final decree against them.

Mr. Rebmann, the plaintiff, lives near Mountain Grove, Missouri, but in Texas County, upon the land involved in this suit. After plaintiff's purchase of the 110 acres, he and his wife, Nellie L. Rebmann (who joined with him in executing and acknowledging the deed), lived together thereon un-

til her death, which occurred on December 8, 1955.

In 1950, both plaintiff and his wife were ill, and on November 10, 1950, they executed the warranty deed in question in their home, there acknowledging it before a notary public. Following the description in the deed is the sentence, "The said parties of the first part retain a life time dower in the above described property, and shall have full and complete control of said property during their lifetime." Plaintiff testified that after the deed was made it was placed in a drawer in the writing desk of the home.

On direct examination plaintiff testified:

"Q. Now, then, after this deed was signed, why didn't you deliver it to the defendants at that time, or part with it?

"A. Well, it wasn't intended to be. We just fixed it in case that if it got real bad now—we was both poorly now and she was very old, not well at all—if it got to where—and we had a will made at the same time, fixed up our will, and we had it all there, and we had it fixed to where if we really got real bad, why we could—if we agreed on it, why we'd do whatever we wanted to about it. We kept it right there in the home."

On December 13, 1950, the deed was recorded, and about that date plaintiff received it from the Recorder of Deeds in his mail. He testified that this was when he first learned that the deed had been recorded; he did not record the deed or take it to the Recorder's office himself and he did not know how it became recorded; and he did not authorize anyone else to have the deed put on record. He never did deliver the deed to any of the defendants or to anyone, nor did he authorize anyone to do so. After plaintiff received the deed from the Recorder's office he put it back in the desk drawer where it had been. At that time plaintiff and his wife had some disagreement or argument about the deed when he found it had been recorded. The deed since that time to the date of filing of the petition, November 21, 1962, has been in plaintiff's possession.

On cross-examination plaintiff testified:

"Q. (by Mr. Green) Now, of course you understand what it means to make a deed, don't you, the purpose of it?

"A. Well, yes, I imagine. Yes, I can see there.

"Q. And you know what the purpose and what it would mean if one was recorded, wouldn't you?

"A. Well, that's the way we change them; that's right.

"Q. Yes, sir, And you and your wife voluntarily made this conveyance—these conveyances to the children, these grandchildren; is that right?

"A. Yes, sir, we done it on our own, ourselves.

"Q. And you had it acknowledged before a notary public; is that right?

"A. Yes, sir.

"Q. And that was in November of 1950?

"A. Well, I believe that's right.

"Q. And in November of 1950 you say that you—the deed was returned to you by the Recorder, through the mail, to you?

"A. Well, it was returned at the mailbox; yes.

"Q. Yes. I say: Was that in November of 1950?

"A. Well, now, I'm not sure about that date.

"Q. Well, how long—when would you say it was delivered back to you?

"A. Well, I just don't know. I don't know how long it was up here before it was recorded, or when it was sent in.

"Q. Well, was it about that time? It was recorded—it shows it was record-ed—

"MR. LAY: December.

"Q. (by Mr. Green) In December of 1950, the 13th day. And was it along about that time it was returned to you?

"A. Well, I — I — according to that it must have been; yes, sir.

"Q. And when you received it, of course you knew it had been placed on record, didn't you?

"A. Yes, sir.

"Q. And you knew, from your experience, that it was—being on record that it conveyed this property to these grandchildren, didn't you?

"A. Well, no, I don't think I did.

"Q. And that has been 13 years—

"A. Yes, sir.

"Q. —since that occurred? Almost 13 years; is that right?

"A. Yes, sir.

"Q. And you have never taken any action whatsoever in connection with the deed of conveyance to set it aside or made any dispute about it until the last nine months; is that correct?

"A. Something like that; yes."

Plaintiff further testified that he had never told the defendants that the deed had been made; he first learned that defendants knew the deed had been made and were making some claim thereunder some eight or nine months before the trial date (May 21, 1963), when defendant Harold Mac Rebmann made some statement to him to the effect that he was going to take over the farm.

Barbara Ernestine Rebmann, one of the defendants, testified that she was, at the time of trial, 24 years of age; Harold Mac Rebmann was 23; Robert Eugene Rebmann was 20; and Linda Carol Rebmann was 17. When she was age 14, 15 or 16, plaintiff told her that he and his wife had made arrangements that the place would be theirs—and that plaintiff had made statements to her that the place was theirs, subject to his life estate. Harold Mac Rebmann denied that he ever told plaintiff that he was going to take over the farm, but that the conversation they had was on a different matter. He recalled the statements made by plaintiff that he had made the place over to defendants.

■■■ Plaintiff's deed was voidable, not void as he contends. See Branner v. Klaber, 330 Mo. 306, 49 S.W.2d 169, where the types of deeds which are absolutely void are set forth. Plaintiff's suit, timely instituted, and if successful, would have had the effect of disaffirming his voidable conveyance. His testimony that he did not record his deed or authorize it to be recorded would have supported a conclusion that there was a surreptitious removal thereof by some person from his drawer, and a wrongful, unauthorized recording thereof. *At that time* plaintiff would have had the right to begin his suit to vitiate his recorded deed, and introduce evidence to show that by recordation there was no intent to deliver the deed, which is the controlling factor. Cleary v. Cleary, Mo., 273 S.W.2d 340, 345 [5–9], and cases and authority there cited. Although the recording of a deed (even by the grantor or at his instance) does not in itself operate as a delivery of the deed (Weigel v. Wood, 355 Mo. 11, 194 S.W.2d 40, 41 [1]; Cravens v. Rossiter, 116 Mo. 338, 22 S.W. 736, 737; 16 Am.Jur. Deeds, § 135, p. 513), such recording does create a presumption or a prima facie case of delivery in view of our recording statute, § 442.390, RSMo 1959, V.A.M.S. That statute imparts notice to the world of the contents of a recorded conveyance. See Chambers v. Chambers, 227 Mo. 262, 127 S.W. 86, 92. In the circumstances here presented, absent an effective rebutting objection upon plaintiff's part, his deed upon the records would carry the

title of the remainder interest to defendants upon cessation of plaintiff's retained life estate.

The candid admission of plaintiff during the trial below is that the recordation of deeds is the way titles are changed. He must be held to that knowledge, and inasmuch as he had immediate actual notice of the wrongful and unauthorized recordation of his deed he would be held to the further knowledge that such deed would carry the title to the objects of his bounty, his minor grandchildren, unless he took steps to set aside the deed upon some valid ground.

■ Plaintiff did not immediately take steps to set aside his deed upon learning that it had been recorded. He waited *almost twelve years* to begin his suit. Defendants' pleaded defense of the ten-year statute of limitations, § 516.010, RSMo 1959, V.A. M.S., is not a bar to plaintiff's claim. Plaintiff was in possession; defendants, being apparent remaindermen not entitled to possession, have held nothing adversely to plaintiff. See Bramhall v. Bramhall, Mo., 216 S.W. 766, 770 [6], and cases there cited and quoted. The determinative question in this case therefore is whether by reason of his twelve years of silent acquiescence in the knowledge of his recorded deed, and of its ordinary legal effect, plaintiff is guilty of such laches (properly permitted by the trial court as an amendment made after the case was taken under advisement, to conform to the proof) as to be barred in maintaining his remedy to set aside his deed upon the ground of nondelivery. In our pursuit of the answer to this question we are not concerned with the merits of the issues of whether or not a delivery was intended at the outset, or whether such a delivery, if not first intended, was later consummated by an implied ratification of the wrongful recordation by plaintiff's long and silent acquiescence in the knowledge thereof. Laches, if applicable, is directed toward the enforcement of the plaintiff's remedy.

■■ The defense of laches, against the prosecution of stale demands, is not limited to cases where a detrimental change of position has been occasioned to a party by reason of delay. The kinds of prejudice usually invoked in support of a plea of laches involve a change of position resulting in financial loss, such as making expenditures upon property in improving it; increase in the value of property; and the intervening rights of third parties. 30 C.J.S. Equity § 118, p. 540. No such prejudice exists in this case. Defendants were apparent remaindermen under the deed at the outset, and have remained just so at all times. In addition, however, to the foregoing inequitable situations of prejudice resulting from a delay which bars relief, there is a further prejudice which has been held to bar a remedy. That is that there has been a loss of testimony and evidence because of the death of a party to the original transaction who was conversant with the transaction. In this case that party was the wife of plaintiff, Nellie L. Rebmann, who joined with him in executing the deed, and to whom a life estate in the land was also reserved or granted.

In the case of Lemoine v. Dunklin County, C.C., 46 F. 219 (affirmed 8 Cir., 51 F. 487, 2 C.C.A. 343), the fact that the witnesses who were conversant with the transaction of the issue of certificates of entry and sale of swamplands were since dead was, among other facts, supportive of the defense of laches. In Burdette v. May, 100 Mo. 13, 12 S.W. 1056, the plaintiffs brought suit to establish a resulting trust upon the ground that defendant entered the land in question in his own name when it should have been entered in the name of his mother, who was alleged to have furnished the money to buy the land. The proceedings were instituted 18 years after the death of the mother, who knew about the transaction. The court said, loc. cit. 12 S.W. 1057, "Courts of equity view with disfavor suits that are brought long after the transactions litigated have occurred, and long after death has sealed the lips of those familiar with occurrences so remote in point of time." Price v. Boyle, 287 Mo. 257, 229 S.W. 206, was a suit to set

aside a deed and for an accounting of a trusteeship. The case was brought five years, lacking one day, after termination of the trust, which occurred upon the death of the life tenant. The trustee died almost four years after the life tenant's death. The court indicated doubt that a prima facie case was made by plaintiff, but went on to rest the decision denying relief upon the ground of laches, saying, loc. cit. 229 S.W. 209 [2, 3]: "Where a party rests upon his rights and fails to bring suit when he might have done so for a time short of the period of limitations, in a proceeding in equity, the courts sometimes deny relief on the ground of an unreasonable delay, where circumstances intervene to work hardship upon the defendant in making his defense. Where, by reason of delay, evidence becomes unavailable, or important witnesses have died, and it becomes impossible to ascertain the facts, laches will bar recovery. Casebolt v. Courtney [Mo.], 195 S.W. 746, and cases cited." See also Thomason v. Beery, 361 Mo. 424, 235 S.W.2d 308, 311; 30 C.J.S. Equity § 119, p. 542; 19 Am.Jur. Equity, § 511, p. 355.

Nellie L. Rebmann, by plaintiff's own testimony, must have known something about the intention of plaintiff in executing the deed. She was present in the home when the deed was returned to plaintiff; indeed, she and plaintiff had a disagreement or argument at that time concerning the recordation. The defendants, all being minors during the time their grandmother was living, are by her death occurring almost five years after recordation of the deed and plaintiff's delay for that period of time, deprived of her version of the entire transaction. Plaintiff makes no attempt to explain his failure to bring his suit until after the death of his wife, who would have been a witness to the occurrences. There was no impediment whatsoever to his right to bring suit within the lifetime of his wife. We hold that plaintiff's delay in prosecuting his claim is for an unreasonable length of time and the same constitutes laches upon his part which bars his relief to cancel his deed.

The decree is reversed and this case is ordered remanded with directions to enter a decree for defendants upon their cross action quieting title to their remainder interest, subject to plaintiff's life estate.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.