EWING HILL, Respondent, v. A. J. MORRIS, Appellant.

St. Louis Court of Appeals, March 9, 1886.

1. PLEADING—PRACTICE—WAIVER.—Filing an answer and proceeding to trial thereon is a waiver of objections to the filing of an amended petition.

2. ACTIONS—AGENCY—FACTOR AND BROKER.—A broker having, through his agent, paid his customer's loss, and the court having held that the agent had no right of action against the customer, for want of privity of contract, the broker may maintain an action for the loss paid.

3. PRACTICE—PARTIES MUST BE CONSISTENT.—An appellant can not, on a second appeal, after having procured a reversal of the cause on his theory of the case, take a position antagonistic to that taken by him on his former appeal.

4. —— SECOND APPEAL.—On appeal in an action at law, the case is not re-examined on the evidence, and the appellant must specifically point out upon the record, the errors of which he complains.

5. —— EVIDENCE—CUSTOM.—Evidence of a general custom of advancing money to cover "margins" in sales for future delivery, will warrant the court in submitting to the jury the question as to the existence of such a custom.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

MILLS & FLITCRAFT, for the appellant: The respondent was a guarantor, was liable to Nichols, and was an independent contractor between Nichols and the appellant. *Hill v. Morris,* 15 Mo. App. 324, 330, 331. The action on this contract to indemnify can not be sustained until the plaintiff has himself paid the loss. *Hearne v. Keath,* 63 Mo. 84; *Hale v. Huse,* 10 Gray, 99. It can not be doubted that Hill could not in any event recover more than he himself had to pay to Nichols, *Bonney v. Seely,* 2 Wend. 481; *Williams v. Aroni,* 35

La. An. 1115, and only after he had paid it. A custom that one may act for both parties is not consistent with good morals and sound policy, and is not to be upheld by the courts. *Farnsworth v. Hemmer*, 1 Allen, 494; *Raisin v. Clark*, 41 Md. 158; *Walker v. Osgood*, 98 Mass. 352. There was no evidence of a general, uniform, fixed custom as to the calling of margins. As to the rule on this, see *Oelricks v. Ford*, 23 How. 62. A custom to be binding must be certain, uniform, and reasonable. Lawson on Usage and Customs, ch. 1. A custom that an agent may sell, in the absence of orders of his principal, is void for unreasonableness. *Foley v. Bell*, 6 La. An. 760.

BOYLE, ADAMS & McKEIGHAN, and SILAS B. JONES, for the respondent: Where a defendant answers an amended petition and goes to trial thereon, he is precluded from afterwards insisting that the amended petition set up a new cause of action. The error, if any, is waived by the defendant in such a case. *Scovill v. Glasner*, 79 Mo. 449. A guaranty is a promise to pay some debt, or perform some duty, in the event of the failure of some other person, who is liable in the first instance. 3 Kent on Com. 121 (13 Ed.); Baylies on Sur. & Guar. 2; Brandt on Sur. & Guar., sect. 2; *Gallagher v. Nichols*, 60 N. Y. 438, 444; *Dole v. Young*, 24 Pick. 250, 252. There must, in fact, be a principal contract to support a guaranty. The contract of guaranty is in its very essence an incident, and can not exist without a principal contract to attach itself to; though it is not essential that the liability of the principal debtor can be enforced by action, for a defence purely personal to the principal debtor, such as infancy or coverture, would not discharge the guarantor. *Weed Sewing Machine Company v. Maxwell*, 63 Mo. 486; Baylies Sur. & Guar. 148; Brandt on Sur. & Guar., sect. 128. We do not understand that the appellant objects to the validity of the usage set up in the plaintiff's petition. Its validity,

however, is unquestioned by the authorities, as far as our investigations have gone. *Corbett v. Underwood*, 83 Ill. 324; *Moeller v. McLagan*, 60 Ill. 317.

Thompson, J., delivered the opinion of the court.

This case was before the court on a former appeal, and, in our opinion, then delivered, the transaction which constitutes the foundation of the action was fully stated. 15 Mo. App. 322. We held that the defendants were entitled to an instruction for a non-suit, on the ground that the plaintiff sued as the assignee of Mellville S. Nichols, and that the evidence showed no contract between the defendants and Nichols.

I. Upon another trial in the circuit court, the plaintiff, by leave of court, filed an amended petition (being the third amended petition filed in the case), with the view of stating a cause of action in conformity with the view which this court took of the facts of the case. The defendants objected to the filing of this petition and moved that it be stricken out: which motion being overruled, they took a bill of exceptions, and then pleaded to the amended petition, and went to trial. They now strongly argue that the court erred in allowing the plaintiff to file this amended petition, on the ground that it stated a different cause of action from that stated in the previous petition. This ruling is not before us for review, because, by pleading to the third amended petition, and going to trial, the defendants waived their objection to it. *Scovill v. Glasner*, 79 Mo. 449, 454; *Fuggle v. Hobbs*, 42 Mo. 537, 541; *Hamlin v. Carruthers*, 19 Mo. App. 567.

II. The amended petition thus filed states the plaintiff's cause of action to be for the sum of $1,137.50, laid out and expended by the plaintiff to make good a certain loss upon a contract made by the plaintiff for the defendants, as a broker, by which he sold for them five hundred barrels of mess pork, on the Chicago board of trade; also, for a reasonable commission for the transaction, and for a sum expended for telegrams touching the same.

The amended petition does not state that the sum of money alleged to have been expended by the plaintiff to make good this loss, was expended by him before the commencement of this action, and the evidence of the plaintiff shows that it had not been expended when the suit was brought. The contention, therefore, is that, whereas, at the time of the bringing of the action, the plaintiff had sustained no personal loss, had paid nothing to his correspondent Nichols on account of the loss which happened, his action was prematurely brought. In support of this contention, the doctrine is appealed to that a guarantor can not recover against his principal, until he has actually paid the loss, the payment of which he has guaranteed. This principle is not doubted, but it has no application here, because Hill was not the guarantor of any debt which Morris owed to Nichols. A contract of guaranty is always collateral to another undertaking. But, in our former decision in this case, we held that there was no contract between Morris and Nichols. The whole reasoning of our former opinion shows that what was meant was that Hill and Nichols, as between each other, were independent contractors, or undertakers, and that the sense in which each one guaranteed the business which he sent to the other, was that they dealt with each other as ultimate principals, neither one of them looking beyond the other to any person for whom the other might be acting. That is the ground upon which that decision rests, and the only ground upon which it could rest; because, otherwise, Nichols would have been entitled to maintain an action against Morris, as the principal, disclosed or undisclosed, of Hill. We then felt the embarrassments which are usually involved in such questions, and I feel them still. But we adopted the view pressed upon us by the able and pursuasive argument of the same counsel, and the same parties who are now asking us to adopt a different view. Whatever may be said now of the conclusion thus reached, it is the law of the case. The

circuit judge tried the case in conformity with it; and it does not lie in the mouth of the same party now to shift his position, to adopt a different view, and to put the circuit court in the wrong, merely because it tried the cause upon a theory which we had laid down for it, which theory was pressed upon us by the party who now complains of it. That theory was, that taking Morris and Hill and Nichols, and standing them in a row, Hill was the agent of Morris, and Nichols was the agent of Hill. This being so, when Nichols paid the loss which happened in consequence of the closing out of the deal, he paid it as the agent of Hill, and for Hill. *Qui facit per alium facit per se.* He charged it up to Hill, and it became a mere matter of accounting between him and Hill. It is quite immaterial to Morris how the account stood between him and Hill at the time when Hill brought the present action. Since Hill is the only person who can maintain an action against Morris for the loss, a recovery by Hill will be a complete bar to any other action, by whomsoever brought, for the same cause.

III. A long argument is submitted to us upon certain phases of the testimony, which would impress us very much if we had power to deal with the case as chancellors. But it is a case at law. An appeal in such a case is a mere substitute for a writ of error. We do not try the case *de novo*, but we limit ourselves to examining those errors which are assigned by the appellant. In this case the appellant has filed the usual printed assignment of errors, in which everything is assigned. For the purpose of aiding us in our investigations, this is no better than assigning nothing, but submitting the case to us upon the record with general observations and arguments upon questions which are supposed to arise somewhere thereon. This is not the way an appeal must be prosecuted in a case at law. It is the duty of the appellant to put his finger upon the specific rulings of the court which he assigns for error, and it is not the duty of the appellate court to go hunting through the record for errors which are not pointed out in this way.

These observations well justify us in disposing briefly of the fifth, sixth, seventh, and eighth paragraphs in the appellant's brief. The argument that, according to Hill's own testimony, the minds of the parties never met, relates to the controversy whether the transaction, as understood between the parties, was that of Morris alone, or of Morris, Cox & Co., a partnership firm, of which Morris was a member. It is sufficient to say that this question was submitted to the jury, and that they disposed of it by finding that it was the individual transaction of Hill only. The argument that, because there was a misunderstanding as to whether it was Morris' individual deal, or the firm's deal, and that, therefore, no contract existed, and neither party was bound, has nothing in it, because Morris gave the order, and if it did not bind his firm, it at least bound him personally. There was no prejudicial error in refusing the seventh instruction offered by the defendant on this point, because it was drawn with a view of exonerating the other members of the firm of Morris, Cox & Co., and the jury exonerated them.

The sixth contention that Hill ought not to recover, because not faithful to his assumed employment by Morris, is an equally futile argument, because the court so instructed the jury in the very terms requested by the defendants. Whether the jury decided the question rightly or wrongly, we do not undertake to say, for that is not our office.

The seventh contention is, that the court erred in refusing an instruction to the effect that the plaintiff could not recover unless he had fulfilled his entire duty by making a valid sale of the pork to some *bona fide* purchaser, and that an agent or correspondent of the plaintiff could not be such a *bona fide* purchaser, nor would any broker acting for another and unknown party, involves a conclusion so absurd as scarcely to require notice. There was no evidence that the parties to whom Nichols sold the pork were not *bona fide* purchasers,

and the proposition that a man can not make a valid sale to his own agent or correspondent, or to a broker buying for an unknown party, is a wild misconception.

The last contention is that there was no evidence of a general, uniform, fixed custom, as to the calling of margins. There was such evidence, and, although there was some difference among witnesses as to the extent of the custom, the custom is so general among American exchanges in regard to the sales of staple commodities for future delivery, such as grain, provisions, cotton, stocks, and bonds, that it may be doubted whether it might not be noticed judicially. We do not, however, decide whether it can or can not, because that question is not involved in this case. It is enough to say that there was sufficient evidence of the custom to warrant the instruction in which the court submitted the existence of the custom to the jury.

The judgment must be affirmed. It is so ordered. All the judges concur.