E. V. MAYBERRY v. HARRY H. CLARK, Appellant.—297 S. W. 39.

Division Two, June 23, 1927.

**1. MORTGAGE: Absolute Conveyance: Straw Man.** A deed absolute upon its face, if the title is held to secure the payment of a debt, is an equitable mortgage, and the grantor or mortgagor may redeem upon discharging the debt. And it does not matter in such case who holds the legal title. A conveyance by the owner of land to a "straw man" and by him to the owner's creditor, if made to secure the payment of the owner's debt to the creditor, is an equitable mortgage.

**2. ———: ———: Pleading: Effect of Prayer: Mortgage or Trust.** The prayer for relief does not affect the character of the action unless the petition is ambiguous. A petition alleging that the land was conveyed to defendant to be held by him as security for the payment of plaintiff's debt, and that plaintiff is the owner of such real estate and entitled to the rents and profits and income thereof, and the proceeds of sales of any part thereof, subject to the right of defendant to be paid whatever amount may be due him on account of said debt, plus any outlays and advances thereon and plus such necessary outlays as he may hereafter make, and asking for an accounting on all such matters, and that the title, held in trust for plaintiff, be divested and vested in plaintiff, is not a petition to establish a parol trust in the land, nor does the prayer for relief make it such, although it does not allege the deeds to be mortgages, or pray to redeem from the lien of such mortgages; and particularly so, where there is no demurrer to the petition for informality, no motion to make more specific, and the case is tried throughout on the theory that the land was held by defendant as security for the payment of plaintiff's debt to him.

**3. ———: ———: Character of Proof.** To establish a deed, absolute on its face, to be a mortgage, the proof must be clear and convincing, so as to satisfy the chancellor beyond a reasonable doubt. And the proof in this case is of that character.

**4. ———: ———: Subsequent Advancements: Incidents.** A conveyance by the owner of land, incumbered by a mortgage, by deed absolute on its face, for the purpose of securing an existing debt owning by the grantor to the grantee and any advances the grantee may make for the grantor, is an

equitable mortgage, and the situation is not changed by subsequent payments by the grantee to protect the property from the lien of said mortgage or taxes, but such later payments are only incidents to the grantee's character as mortgagee.

5. ———: ———: **Exchange for Other Tracts: Change in Relation.** The first conveyance, absolute on its face, having been made for the purpose of securing an existing debt owing by the grantor to the grantee, and therefore possessing the character of an equitable mortgage, an exchange of the land for other real estate did not change the relation of the parties, but the trust which attached to the conveyance in the hands of the grantee as mortgagee continued and is to be applied to the property for which the land first conveyed was exchanged.

6. ———: ———: **To Defraud Grantor's Creditors.** A conveyance in fraud of creditors is good as between the parties, and possess exactly the character they intended it to possess. So that if the conveyance, absolute on its face, was made to secure the payment of a debt owing by the grantor to the grantee, it was an equitable mortgage, and it is immaterial, in the grantor's suit to redeem, whether the grantor's intention, in conveying the property to defendant through a straw man as a conduit, was to hinder, delay or defraud his other creditors.

7. **ACCOUNTING: Exceptions: Abandonment.** Notwithstanding exceptions were filed to the report of the special master who took the accounting, if no objection to the report and the finding of the court in relation to it is carried forward into appellant's brief the appellate court will not consider such exceptions.

Corpus Juris-Cyc. References: **Appeal and Error**, 3 C. J., Section 1589, p. 1417, n. 90. **Equity**, 21 C. J., Section 857, p. 678, n. 54. **Fraudulent Conveyances**, 27 C. J., Section 430, p. 659, n. 51. **Judgments**, 33 C. J., Section 89, p. 1146, n. 91. **Mortgages**, 41 C. J., Section 64, p. 310, n. 64; Section 65, p. 315, n. 73; Section 118, p. 350, n. 39; Section 119, p. 353, n. 51; Section 123, p. 354, n. 62; Section 124, p. 357, n. 72; Section 129, p. 362, n. 4.

Appeal from Circuit Court of City of St. Louis.—*Hon. Moses Hartmann*, Judge.

AFFIRMED.

*Edward A. Feehan, J. L. Simpson* and *P. H. Hiles* for appellant.

(1) A, who had no title or interest, legal or equitable, in land deeded by B to C, cannot sustain a contention that the absolute deed from B to C is a mortgage securing an indebtedness of A to C. Conkey v. Rex, 212 Ill. 444; Heaton v. Gaines, 198 Ill. 479; Caprez v. Trover, 96 Ill. 456; Mosely v. Mosely, 86 Ala. 289; Hill v. Grant, 46 N. Y. 496; Loomis v. Loomis, 60 Barb. (N. Y.) 22; Matthews v. Porter, 16 Fla. 466; Benge v. Benge (Ky.), 23 S. W. 668; Barber v. Toomey, 67 Ore. 453. (2) The burden of proving that a deed absolute in form was executed and delivered by the grantor and accepted by the grantee with the intention on the part of both that it should operate as a mortgage is upon the party making that contention, and he must sustain the burden of proof not by a mere

preponderance of evidence, as in civil suits generally, but beyond a reasonable doubt.   Burke v. Murphy, 275 Mo. 397; Rinkel v. Lubke, 246 Mo. 377; Gerhardt v. Tucker, 187 Mo. 46; Jones v. Rush, 156 Mo. 364; Worley v. Dryden, 57 Mo. 226; Whelan v. Tobener, 71 Mo. App. 361; King v. Graves, 42 Mo. App. 168.   (3)  It is not the existence, but the continuance and survival of an indebtedness from grantor to grantee which may tend to prove that a deed absolute in form is in equity a mortgage.   Carson v. Lee, 281 Mo. 166; Donovan v. Boeck, 217 Mo. 70; Duell v. Leslie, 207 Mo. 658; Bailey v. Trust Company, 188 Mo. 483; Bobb v. Wolff, 148 Mo. 335; Slowey v. McMurray, 27 Mo. 113.   (4)  A conveyance of property with intent to delay or defraud creditors is binding on the parties thereto. Springfield Assn. v. Roll, 137 Ill. 205; Moore v. Horsely, 156 Ill. 36; Lander v. Ziehr, 150 Mo. 403; Gentry v. Field, 143 Mo. 399; Moore v. Carr, 65 Mo. App. 64.

*Hope & Hope* for respondent.

(1)  A conveyance to secure debt is a mortgage, whatever the form of the deed or however absolute upon its face.   3 Pomeroy's Eq. Jurisprudence (3 Ed.) sec. 1196; Turner v. Kerr, 44 Mo. 433; Cobb v. Day, 106 Mo. 278; Book v. Beasley, 138 Mo. 455; Phillips v. Jackson, 240 Mo. 310; Sutphen v. Cushman, 35 Ill. 196; Cassem v. Huestis, 201 Ill. 214; Rankin v. Rankin, 111 Ill. App. 408; Smith v. Sackett, 15 Ill. 533; Miller v. Miller, 100 Md. 600; Hursey v. Hursey, 56 W. Va. 148; Bearson v. Ford, 108 Ill. 16; Tillison v. Moulton, 23 Ill. 648.   (2)  It matters not whether the debt be preexisting, a present loan or an advance to be made in the future. Brant v. Robertson, 16 Mo. 143; Phillips v. Jackson, 240 Mo. 331; 3 Pomeroy's Eq. Jurisprudence (3 Ed.) sec. 1197.   (3)  Not necessary for it to be represented by note or other form of written evidence of debt.    Brant v. Robertson, 16 Mo. 143.   (4)  It makes no difference that the title to the Wayne County land was in Layton's name, since he held it for plaintiff, who was the real owner.   It is sufficient that plaintiff had an interest in the property, either legal or equitable.   Sharkey v. Sharkey, 47 Mo. 543.   (5)  "Once a mortgage, always a mortgage."   3 Pomeroy's Eq. Jurisprudence (3 Ed.) sec. 1193; Phillips v. Jackson, 240 Mo. 310; O'Neill v. Capelle, 62 Mo. 202; Wilson v. Drumrite, 21 Mo. 328; Peugh v. Davis, 96 U. S. 322; Jackson v. Lynch, 129 Ill. 72.   (6)  It makes no difference that the Wayne County land was exchanged for the Hamilton County 274 acres, and that the latter was exchanged for the equity in the St. Louis apartment property.   The original conveyance (Layton-Clark deed) having been as security for plaintiff's indebtedness to Clark, their relation became in equity that of mortgagor and mortgagee.

That relation continued throughout the subsequent exchanges of property and governs their respective rights as to the property ac-quired by use of the mortgaged land. Over v. Carolus, 171 Ill. 552. (7) In determining whether a deed absolute in form was intended as security and, therefore, a mortgage, resort may be had to the circumstances attending the transaction. Parol evidence is admissible, including declarations of the grantee at the time of taking the deed and subsequently; also the subsequent conduct of the parties with reference to the property. Desloge v. Ranger, 7 Mo. 329; Brant v. Robertson, 16 Mo. 129; Book v. Beasley, 138 Mo. 455; O'Neill v. Capelle, 62 Mo. 202; Phillips v. Jackson, 240 Mo. 310; Brightwell v. McAfee, 249 Mo. 562; Cassem v. Huestis, 201 Ill. 214; Rankin v. Rankin, 111 Ill. App. 408; Smith v. Sackett, 15 Ill. 433; Bearson v. Ford, 108 Ill. 16; Tillison v. Moulton, 23 Ill. 648; Miller v. Miller, 100 Md. 600; Smith v. Cremer, 71 Ill. 185; Hursey v. Hursey, 56 W. Va. 148. (8) It stands conceded that plaintiff owed defendant $1200 at the time plaintiff caused his Wayne County land to be deeded to defendant, and that the existence of the debt was the cause of the conveyance. This alone stamps it as a mortgage. Brant v. Robertson, 16 Mo. 144; Russell v. Southard, 12 How. (U. S.) 139; Peugh v. Davis, 95 U. S. 322; Sutphen v. Cushman, 35 Ill. 196; Ruckman v. Alwood, 71 Ill. 155; Cassem v. Huestis, 201 Ill. 214; Smith v. Sackett, 15 Ill. 533.

WHITE, P. J.—The purpose of this action, brought in the Circuit Court of the City of St. Louis, was to have an accounting between the plaintiff and the defendant, and redeem certain real estate claimed by plaintiff and held by defendant in his own name as security for debts which plaintiff alleged had been paid.

In January, 1915, the plaintiff owed the defendant $1200, evi-denced by a promissory note. At that time the plaintiff and defend-ant lived in Wood River, Illinois. One W. L. Layton had the record title to 400 acres in Wayne County, Illinois; the land belonged to plaintiff Mayberry. Layton was a clerk in the office of P. J. Soucy, a real estate agent in East St. Louis. Mayberry had a desk in the same office. There is no dispute but that Layton was a straw man.

On January 7, 1915, Layton, at the direction of Mayberry, con-veyed the 400 acres in Wayne County to Clark, defendant, Mayberry asserts for the purpose of securing the $1200 note. Clark claims here that he purchased the land in consideration of his canceling of the note. One John K. Wright, uncle of Mayberry, was surety on the note. The note was not surrendered at the time of the conveyance. Clark swore at the trial that he could not find it at that time, and that he later sent it to Wright. Mayberry swore that the note was never surrendered; denied that he received it, and said he had no

knowledge that Wright received it. It is undisputed that, at the time the conveyance was made, Clark agreed not to sue on the note. The land was encumbered. A mortgage of $1800 was against 160 acres of the tract, and a mortgage of $1600 was against the remaining 240 acres. The $1800 mortgage had been foreclosed, but under the law of Illinois the time for redemption had not expired. Clark later advanced the money to redeem, and paid off the debt, which amounted to $2005.80.

The plaintiff enlisted and went into the war in 1917. He served over seas until the summer of 1919, when he returned to East St. Louis. During his absence Clark permitted the taxes on the 400-acre tract to go unpaid; he let the interest accumulate on the $1600 mortgage on the 240 acres. That mortgage had been foreclosed, but the redemption period had not expired. Mayberry went to the county seat of Wayne County, found out the amount necessary to redeem the 240 acres from the mortgage and taxes, $2800, and drew on Clark at Wood River for the amount, which Clark paid, taking Mayberry's note for it.

Mayberry then negotiated a trade of the 400 acres for what was termed "the Allen Farm" of 274 acres, in Hamilton county, Illinois. Of the Wayne County tract 360 acres was exchanged for the Allen Farm. In making the trade, $1500 "to boot" had to be paid to Allen; Clark advanced the money, and the 274 acres was conveyed to him. This was in January, 1921. The remaining 40 of the 400 acres was sold by Mayberry, Clark executing the deed, for $600, which was paid to him.

In July, 1921, a trade was negotiated by Mayberry, as the evidence shows, by which the 274 acres in Hamilton County, Illinois, was traded for two lots, upon which were apartment houses, at 3933 and 3937 West Pine Boulevard, St. Louis, Missouri, subject to two mortgages, one on each lot for $14,000. Three thousand dollars on one of the mortgages fell due, and Clark advanced the money to pay it. In November, 1922, Clark came to St. Louis, and obtained a loan for $16,500. He gave as security a second mortgage on each of the properties for $8,250. He turned the proceeds over to the First Trust & Savings Bank at Wood River, Illinois, of which he had been president. After this suit was brought Clark conveyed the apartment to L. V. George of Edwardsville, Illinois, who acted as trustee for his creditors.

The trial court, after hearing the evidence, rendered judgment December 17, 1923, finding that Clark held the several tracts of land as security for indebtedness which the plaintiff owed him; the 400 acres in Wayne County, later the 274 acres in Hamilton County, Illinois, for which the first was exchanged, and later still the apartment properties in St. Louis, for which the latter was exchanged; that the defendant had wrongfully placed two deeds of trust on the

Pine Street property, whereby he realized the sum of $16,500, which he wrongfully appropriated; that he had received the rents on said property during the time he held it, for which he should account. The court ordered an accounting between the plaintiff and the defendant, charging Clark with all the money he had received from the several properties, and giving him credit for all he had paid out on the same, with interest from the dates of such payments. The court then appointed one Matt Sherer special master to take the accounting and report to the court. On March 22, 1924, the master filed his report, finding that the indebtedness of plaintiff to Clark, including all that Clark had paid out in redeeming the Illinois property, for taxes and other purposes, in connection with the property, to be $9,898. He found that Clark had received $600, realized from the 40 acres sold in Wayne County, Illinois, in 1921; that he had received as rentals $7,985.98 on the St. Louis properties. To this was added interest on those two items from the time he had received the money. He was also charged with the money realized from the mortgage placed upon the St. Louis property of $16,500; a total of $25,470.92, which, after subtracting the $9898 due him by plaintiff left a balance of $15,572.92, for which judgment was entered for the plaintiff and against the defendant. The original judgment divested the title to the Pine Street property from Clark and vested it in the plaintiff. From the judgment the defendant appealed.

I. It is claimed by defendant that the petition does not declare on an action to redeem from a mortgage, but that the effect of the allegation is that the defendant held the land in trust for the plaintiff.

**Suit: Characterized by Prayer.** The defendant pleaded and introduced in evidence Section 9, Chapter 59, of the Revised Statutes of Illinois, which provides that all declarations of trust or conveyances of any land shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, etc., or by his last will in writing, or else it shall be utterly void and of no effect. Provided that resulting trusts, or trusts created by construction, implication or operation of law need not be in writing, and the same may be proved by parol. The law of Illinois is the same as it is in Missouri, to the effect that a deed absolute upon its face, if the title is held to secure the payment of a debt, is an equitable mortgage and the mortgagor or grantor may redeem on discharging the debt. The Illinois statute does not affect this case if, in fact, the conveyances to Clark were to secure a debt.

The petition alleges that when the 400-acre tract in Wayne County was conveyed to the defendant, it was arranged and under-

stood between plaintiff and defendant that the title was to be vested in the defendant "to be held by the defendant in trust for plaintiff, and as security for the payment of said debt of $1200, and such additional sums as the defendant might thereafter advance from time to time towards the payment of said $3,400 mortgage debt, taxes on the land, and any other actual outlays defendant might make in holding said 400 acres of land."

When the trade was made for the 274 acres in Hamilton County, Illinois, the petition alleges, the land was conveyed to the defendant to be held by him pursuant to the agreement aforesaid. When the 274 acres were exchanged for the St. Louis property, the petition alleges, the arrangement theretofore existing between plaintiff and defendant respecting the 274 acres should continue in force and effect as to the real estate in St. Louis; the plaintiff was the owner of said real estate and entitled to the rents and profits and income thereof, and the proceeds of any sale, subject only to the right of defendant to be paid whatever might be due him on account of said $1200, and his advances and outlays on said Illinois lands, plus such necessary outlays thereon as he might thereafter make; the title was vested in the defendant "to be held by him in trust as security for the payment," etc.

The petition thus sufficiently alleges that each tract of land was held by the plaintiff as security for indebtedness the defendant owed him.

Appellant argues that the prayer for relief characterizes the petition as one to declare a trust. The prayer does not determine the character of the action unless the petition is ambiguous. The prayer for relief in this case asks for an accounting on all the matters mentioned in the petition; that the title to the real estate in St. Louis, held in trust for plaintiff, be divested and vested in the plaintiff, and for all other equitable relief.

It is true the plaintiff did not ask the court to declare the several deeds held by defendant to be mortgages, nor pray to redeem from the lien of such mortgages. A prayer for redemption would not affect the remedy. After the court should find the facts stated in the petition, the only remedy it could declare would be to take an accounting and divest the title. The effect of the pleading was this: The defendant holds the St. Louis property as security for a debt which plaintiff owed. He realized more than enough money on that property, mortgages and rents, to pay what plaintiff owed. Therefore, plaintiff demands that he account for the surplus, and that the title be divested from him and vested in plaintiff. There was no demurrer to the petition, for informality; no motion to make more specific. The case was tried all the way through upon the theory that the land in each case was held as security for the plaintiff's debt. Defendant objected to some evidence on the

ground that it was an attempt to establish a trust by parol, which objection was overruled and correctly, because all such evidence was relevant on the theory of security for debts.

II. The appellant makes the point that a deed absolute on its face cannot be declared to be a mortgage to secure an indebtedness from A to C, unless the conveyance is made by A and the title was

**Conveyance to Straw Man.** in A to begin with. The proposition is that because Layton, who held the 400 acres for the plaintiff, conveyed the property to the defendant, therefore it could not be security for the plaintiff's debt.

Appellant cites some Illinois cases in support of this position, and in each one of them the party who claimed the right to redeem had no interest whatever in the property at the time it was conveyed. It does not matter who holds legal the title in such case, if the party who owes the debt causes a conveyance to be made of any real estate in which he has an interest, to his creditor, for the purpose of securing the debt, the conveyance is a mortgage. [Sharkey v. Sharkey, 47 Mo. 543, l. c. 544-5.]

III. The point next made by appellant is that to establish a deed, absolutely in form, to be a mortgage, the proof must be clear and convincing so as to satisfy the chancellor beyond a reasonable

**Proof.** doubt. There is no doubt about the correctness of that proposition, which makes it necessary to examine the evidence to show whether the burden has been sustained.

Plaintiff's own testimony definitely and clearly supported the allegations of the petition regarding the agreement and purpose for which the defendant held the title to the several tracts of land.

As appellant contends, the test is whether a debt from the grantor to the grantee, existing at the time of the conveyance, continues in force after the conveyance.

After the conveyance of the 400 acres of land to Clark, Mayberry took charge of it, collected the rents and used them. The evidence does not show he ever accounted to Clark for those rents. He paid the taxes on the land, attended to the redemption from the mortgage, and drew on Clark for the amount, accompanying the draft with his note for the amount, $2800. He alone attended to the transaction whereby a large part of the 400 acres was exchanged for the 274 acres. He also conducted negotiations whereby the 274 acres were traded for the St. Louis property. Clark paid him no commission for any of the trades. Clark attempted to explain that situation by saying that he paid the plaintiff money at different times, but he was unable to fix any definite sum as a commission paid for attending to any of those trades. Clark at no

317 Mo. Sup.—29.

time exercised ownership over any of the property until 1922, when he placed the mortgage on the St. Louis property. At least three witnesses who were acquainted with or participated in some of the transactions testified to statements made by Clark to the effect that the plaintiff owed him money, and that the land belonged to Mayberry, and Mayberry had the disposition of it. The original note for $1200, at the time the conveyance of 400 acres was made to Clark, was not surrendered or canceled. Clark was unable to make a satisfactory explanation of that circumstance, consistent with his theory that it was paid by the conveyance of the land. He said he could not find it at the time. He said he afterwards sent it to Wright, plaintiff's uncle, and there was no plausible reason for that. The plaintiff testified directly that it was never delivered to him and he knew of no such delivery to Wright. At the time the mortgage was paid off on the 400-acre tract, Mayberry attended to the matter, drew on Clark for the amount, $2800, and sent his note to Clark for that amount. That note was turned over to the bank, according to Clark's testimony, of which he had been president. It was outstanding at the time of the trial. Clark made no reasonable explanation of why he accepted that note and why it had been retained. His testimony on all of these matters was far from convincing, and he admitted that he himself had a criminal record. We think the evidence was entirely sufficient from which the chancellor could find beyond a reasonable doubt, that the land was conveyed in the first place, as the plaintiff claimed, for the purpose of securing the $1200 note, and any advances which Clark might make for plaintiff; that the indebtedness was not canceled at the time of the first conveyance, but continued in force until the time of the trial.

Having established that the conveyance of the 400 acres was for the purpose of securing plaintiff's debt, and therefore possessed the character of an equitable mortgage, the situation was

**Advances.** not changed by subsequent payments by Clark to protect the property. That was incident to his character as mortgagee.

Nor did the relation of parties change by the exchange of the property for other property. The trust which attached in the hands of the mortgagee continued as applied to the property for which the first property was exchanged. [Over v. Carolus, 171

**Continuous.** Ill. 552.] The fact that Clark continued to treat each piece of property, as it was received in exchange for a previous one, as the property of the plaintiff, until he reached the necessity of mortgaging the St. Louis property, indicates an understanding by both parties, that he held it as security for all that the plaintiff owed him.

IV. Appellant makes the point that the plaintiff was in debt at the time he caused the conveyance of the 400 acres to be made to him, and that he held the property in the name of Layton, and had it conveyed to Clark for the purpose of hindering, delaying, or defrauding his creditors, and for that reason he cannot claim beneficial interest in the property after conveyance. We have not examined the evidence in relation to that to determine whether the evidence showed any such purpose. The rule is that a conveyance in fraud of creditors, or one which is for any reason fraudulent and voidable as to other parties, is good as between parties. [Price v. Morrison, 291 Mo. l. c. 262-263; Lander v. Ziehr, 150 Mo. 403.] So, whatever the effect of the conveyance might be as to the creditors of the plaintiff, as between plaintiff and defendant, it possessed exactly the character which they intended it to possess.

**To Defraud Creditors.**

V. The appellant filed exceptions to the report of the special master who took the accounting, but no objection to that report and the finding of the court in relation to it is carried forward into the appellant's brief, and therefore we will not consider such exceptions.

**Exceptions.**

The evidence is quite full and complete, clear and definite, in support of the plaintiff's claim. The finding of the trial court was fully warranted, and therefore the judgment is affirmed. *Blair* and *Walker, JJ.*, concur.