W. T. YOUNGER and LOLLIE E. YOUNGER, Appellants, v. GRACE A. S. EVERS and HARRY E. EVERS, ST. LOUIS UNION TRUST COMPANY, a Corporation, and CHARLES H. A. UETRECHT, Trustees Under the Will of GRACE E. L. SCULLY, Deceased; ADAH C. P. L. HOOD, CHARLES H. A. UETRECHT, Guardian of the Person and Estate of GRACE M. L. UETRECHT, n. c. m., B. F. LETSON, G. M. LETSON, C. W. LETSON and NAOMI R. L. RALSTON.—64 S. W. (2d) 936.

Division One, October 19, 1933.

932

G. H. Snelthaus and *Stout & Spencer* for appellants.

*Bryan, Williams, Cave & McPheeters* for respondents.

934

GANTT, J.—This suit was filed in September, 1929. Plaintiffs seek to have a trust declared in certain apartment property, and for an accounting. The petition was dismissed and judgment entered for defendants. Plaintiffs appealed.

In substance, the petition alleged that plaintiffs were the owners of a farm in Franklin County, subject to a deed of trust for $3,200; that on April 27, 1914, they conveyed the farm by warranty deed to Grace Scully, subject to said deed of trust; that said conveyance was made under a written agreement and to secure the payment of money advanced to plaintiffs by Grace Scully; that on September 1, 1914, plaintiffs and Grace Scully traded the farm, subject to said deed of trust, for Blair Avenue apartment property in St. Louis and $300 in cash; that said apartment property was encumbered by a deed of trust for $3,500, and was traded subject to said deed of trust;

that on the exchange of properties plaintiffs' total indebtedness to Grace Scully was $831.94, which represented her only interest in the Blair Avenue property; that on October 1, 1914, plaintiffs moved to one of the apartments of said property and occupied same free of rent; that they improved said property, collected the rents for other apartments. which they delivered to Grace Scully, to be applied on their indebtedness to her and for expenses paid by her; that from September 1, 1914, to January 10, 1919, the rents so collected amounted to $3714.87, and that during that time Grace Scully expended on the property and advanced to plaintiffs $2284; that on January 10, 1919, Grace Scully owed plaintiffs $1430.87, the difference between rents collected and money expended by her on said property; that plaintiffs demanded a settlement and Grace Scully told them to wait until the property was sold, and if not sold it was not necessary for them to have a deed to the property as she (Grace Scully) would transfer title to them by her will and would also leave them other property; that plaintiffs, relying upon said representations, made no effort to have said property transferred to them and made no effort to have a settlement with Grace Scully; that Grace Scully died testate on February 27, 1921, and by will gave the Blair Avenue property to the St. Louis Union Trust Company and Chas. H. A. Uetrecht in trust for defendant Grace Evers, with remainder to other defendants; that plaintiffs received nothing under said will; that defendants knew the Blair Avenue property belonged to plaintiffs, but refused to deliver same to them; that defendants have been and now are collecting rents from said property; that plaintiffs demanded of defendants the return of the property subject to the amount of their indebtedness, if any, but defendants refused to deliver same to plaintiffs and account for rents and profits from said property.

Wherefore, plaintiffs prayed the court to adjudge that Grace Scully held title to the farm and Blair Avenue property in trust for plaintiffs, and for an accounting; that defendants be divested of title to the Blair Avenue property; that same be vested in plaintiffs, subject to a lien in favor of defendants for the amount of indebtedness. if any, of plaintiffs to Grace Scully, and for such other and further relief as may be proper.

██ ██ If the farm was conveyed to secure the payment of a debt, as alleged in the petition, the warranty deed was an equitable mortgage on the farm. If so, the title to the Blair Avenue property for which the farm was traded, was held by Grace Scully as mortgagee to secure the payment of the debt. [Mayberry v. Clark, 317 Mo. 442, l. c. 450, 297 S. W. 39.] It follows that on default, the mortgagee (Grace Scully) was entitled to foreclosure. On the other hand, by payment of the debt, the mortgagors (plaintiffs) could redeem. There was neither foreclosure nor redemption. Furthermore, by the prayer to the petition, plaintiffs do not seek to redeem. They seek title to the

property subject to a lien in favor of defendants for the indebtedness of plaintiffs to Grace Scully and for general relief. Even so, the nature of the action is not fixed by the prayer. The petition was not ambiguous as to the transaction. [Mayberry v. Clark, supra, 1. c. 448.] It has been stated that almost any bill in equity which shows the essentials of a right to redeem mortgaged premises may be so treated. It may be held a bill to redeem, although originally written with a view to different relief. [Constant v. Simon, 303 Mo. 203, 1. c. 210, 259 S. W. 424.] The petition contains no offer to pay the amount, if any, found due on the accounting. However, it prays for general relief. We think the proceeding should be treated as an action to redeem the property.

The answer of defendants St. Louis Union Trust Company and Chas. H. A. Uetrecht admitted that Grace Scully died on February 27, 1921, leaving a will by which she gave the Blair Avenue property to them as trustees and denied the other allegations of the petition. In substance, the answer then alleged that any claim of plaintiffs against the estate of Grace Scully or said defendants for money was barred by Section 182, Revised Statutes 1919 (Sec. 183, R. S. 1929), and also barred by the failure of plaintiffs to exhibit such claim in the probate court against the estate of Grace Scully; and further that any claim of plaintiffs against said trustees or against any property in their possession was barred by plaintiffs' laches in failing to assert such claim during the life of Grace Scully and for more than eight years after her death; and further that plaintiffs by failing to assert any claim to said property or the rents therefrom during said time were now estopped to make claim against said defendants on account of any moneys collected by them from said property and disbursed as such trustees. The answer of defendants Grace and Harry Evers was a general denial. The other defendants did not answer.

The reply was a general denial with a plea that plaintiffs owned the property and that their failure to assert a claim of ownership prior to the filing of this suit did not mislead or in any manner injure defendants.

At the close of the whole case defendants asked leave to amend the answer by pleading adverse possession for a period of ten years. The court permitted the amendment over the objection of plaintiffs. On the filing of the answer so amended plaintiffs, by leave of court, refiled their reply to said answer. In doing so they waived the objection to the amendment. [Lee v. W. E. Fuetterer B. & S. Co., 323 Mo. 1204, 23 S. W. (2d) 45, 1. c. 57; Boyd v. Brewing Assn., 318 Mo. 1206, 5 S. W. (2d) 46; Ingwerson v. Railroad Co., 205 Mo. 328, 1. c. 336, 103 S. W. 1143; Grymes v. Mill & Lumber Co., 111 Mo. App. 362, 85 S. W. 946; Hill v. Morris, 21 Mo. App. 256; Liese v. Meyer, 143 Mo. 547, 1. c. 556, 45 S. W. 282.]

Defendants abandoned the defenses that plaintiffs' claim was barred by Section 182, Revised Statutes 1919 (Sec. 183, R. S. 1929), and by failure of plaintiffs' to exhibit the claim in the probate court against the estate of Grace Scully. It follows that the defenses of laches on the part of plaintiffs and adverse possession present the only questions for review.

There was no evidence tending to show that on January 10, 1919, Grace Scully owed plaintiffs $1430.87, net income from said property. There also was no evidence tending to show that plaintiffs demanded a settlement and Grace Scully told them to wait until the property was sold, and if not sold she would transfer title to them by will. There also was no evidence tending to show that plaintiffs demanded possession of the property from either Grace Scully or defendants.

The facts about which there is no controversy follow: On December 29, 1909, plaintiffs purchased and moved to a farm in Franklin County. They were not successful farmers and borrowed sums of money from Grace Scully of the city of St. Louis, an aunt by marriage of Mrs. Younger. Finally on April 27, 1914, plaintiffs conveyed the farm to Grace Scully by warranty deed, subject to a deed of trust in favor of the Franklin County Bank for $3,200. Mr. Waldeck, a real estate agent, handled the business for Grace Scully. The conveyance was made under a written contract with Grace Scully. It was expressly provided in the contract that the farm was conveyed in consideration of money loaned to plaintiffs by Grace Scully and on condition that if the farm was sold Grace Scully would be paid said money with interest, and the balance, if any, would be paid to plaintiffs.

They did not sell the farm. However, on September 1, 1914, it was traded by plaintiffs and Grace Scully for certain Blair Avenue property in St. Louis and $300 in cash. The property consisted of a two-family flat in front and a four-family flat in the rear. The exchange was made subject to the $3,200 deed of trust on farm and subject to a $3,500 deed of trust on the Blair Avenue property.

On October 1, 1914, plaintiffs moved to the first floor front apartment of said property. At that time only one-half of the apartments were occupied. The property was in bad repair and Mr. Younger being a carpenter proceeded to repair the buildings. In time all of the apartments were occupied. He collected the rents, continued to make repairs, paid the janitor, performed other maintenance services and kept none of the rent money. He continued to collect the rent for about two years. Thereafter the rents were collected by Mr. Waldeck (real estate agent for Mrs. Scully) until his death in 1917 or 1918. After the death of Waldeck the rents were collected by Mr. Miltonberger for Mrs. Scully. In July, 1918, Mrs. Scully told plaintiffs to pay rent on the apartment occupied by them or move from

the property. They paid rent for about two months and then moved to property on Oregon Avenue.

Thereafter they did not return to the property and made no inquiry of Grace Scully about rents or the indebtedness against the property. On learning of her death, Mr. Younger examined her will, dated October 10, 1918. It disposed of seventeen real estate properties in St. Louis. The Blair Avenue property was not mentioned in the will. She devised said property by the residuary clause to the St. Louis Union Trust Company and Chas. H. A. Uetrecht in trust for the benefit of her daughter Grace Evers for life, with remainder to certain grandchildren. The inventory filed in the probate court listed the Blair Avenue apartments as the property of Grace Scully. After examining the will and inventory, plaintiffs made no inquiry about or claim to said property. In other words, although in financial distress from the time they moved from the property until the filing of this suit plaintiffs in no way asserted an interest in said property.

The trustees named in the will took charge of said property on March 15, 1921. They submitted an account in evidence which showed that they collected rents to February 25, 1930, amounting to $8644.75, and that they expended for repairs, expenses, insurance, taxes and trustees' fees $4560.45. As directed by the will they paid the net income amounting to $4084.30 to Grace Evers.

In addition to the facts above stated, there was testimony as follows:

Mr. Younger testified that he paid rent on the Blair Avenue property because he was ordered by Grace Scully to do so or move from the property; that he could not move at once because of the physical condition of his wife and daughter; that he made no effort to collect the rents after Mrs. Scully's death because he didn't know who held the property; that he was not in condition to make a fight; that he didn't visit the heirs or the Evers and they did not visit him; that he was not on speaking terms with them; that he did not talk to Mr. Uetrecht after Mrs. Scully's death and that he did not go to the St. Louis Union Trust Company.

Mrs. Younger testified that in 1918 Mrs. Scully told them to pay rent or move from the property; that they were in financial distress from the time they lived on Blair Avenue to the time of filing this suit; that Mrs. Uetrecht, the granddaughter of Grace Scully, was insane before the suit was filed.

Mrs. Cooper, a tenant in the Blair Avenue property, testified that about two years before Grace Scully died she asked the Youngers why they were moving; that they told her they "could not keep the payments up" and "had lost the place;" that both the Youngers and their daughter Catherine were present when the statement was made; that Grace Scully came to the Blair Avenue property and Mrs.

Younger introduced her to the tenants as their future landlady and that in doing so she stated: "Mrs. Scully owns the property now."

Benjamin F. Letson, a grandson of Grace Scully and interested in the Blair Avenue property as remainderman, testified that he knew the Youngers during the time they lived in the Blair Avenue property; that at different times and at the direction of Grace Scully he made repairs on said property; that about 1918 or 1919 he and Mr. Younger were at the home of Grace Scully; that she wanted some repairs made on the property; that Mr. Younger at that time said to him that "Mrs. Scully now owns the property. You will have to get the money from her."

George M. Letson, also a grandson of Grace Scully and interested in said property as remainderman, testified that he knew the Youngers at the Blair Avenue property; that he papered the apartments; that Mr. Younger told him Grace Scully would pay for the papering; that on another occasion he and Mr. Younger were at the home of Grace Scully and she said to Younger: "I am settled up with you and I am through."

Mrs. Charles Hood testified that after the death of her grandmother, Grace Scully, she asked the defendant Grace Evers why Grace Scully had kept the Blair Avenue property, and she answered as follows: "Well, that was ma's affair and not mine."

In rebuttal, Mr. and Mrs. Younger admitted introducing Grace Scully to the tenants and telling them that she would be the future landlady. However, they denied the other evidence given in the case by Benjamin and George Letson and Mrs. Cooper.

Defendants contend that the merits of this controversy cannot be determined because of the delay of plaintiffs in asserting their claim and because of the absence of evidence. On the question, in Dexter v. MacDonald, 196 Mo. 373, l. c. 399, 95 S. W. 359, we said:

"It is fundamental that equity views with disfavor suits that are brought after the death of the party whose estate is sought to be affected where such suit might have been brought during the lifetime of the party acquainted with the whole business, and no reason or excuse being alleged or proven why such suit is delayed until after the death of the adverse party."

And in Lenox v. Harrison, 88 Mo. 491, l. c. 497, we quoted with approval a ruling of Cooley, J., in German American Seminary v. Kiefer, 43 Mich. 105, as follows:

"It would be the height of injustice to permit complainant, with full knowledge of the facts, to delay suit while the persons who were familiar with the facts were one by one passing away, and at last bring suit under circumstances which, at best, must leave the court in doubt whether the remaining evidence does not disclose a partial, defective, and misleading case. A court of equity ought to refuse interference under such circumstances."

And in McKee v. Downing, 224 Mo. 115, l. c. 144, 124 S. W. 7, we said:

"The courts do not look favorably upon claims of many years' standing where all the facts might have been established by a timely suit. They are slow to disturb land titles which have existed for many years and where neither of the parties who were most concerned can testify, one being dead and the other's mouth being closed by that fact; and when those are the facts and the decree divesting the title is dependent upon oral testimony, detailing in many cases loose conversations which occurred years agone, they require the mind of the chancellor to be satisfied by clear and positive proof."

And in Price v. Boyle, 287 Mo. 257, l. c. 271, 229 S. W. 206, we said:

"Laches is urged as a defense. Where a party rests upon his rights, and fails to bring suit when he might have done so, for a time short of the period of limitations, in a proceeding in equity, the courts sometimes deny relief on the ground of an unreasonable delay, where circumstances intervene to work hardship upon the defendant in making his defense. Where, by reason of delay, evidence becomes unavailable, or important witnesses have died, and it becomes impossible to ascertain the facts, laches will bar recovery."

The maxim "Once a mortgage, always a mortgage" does not prevent a mortgagee from acquiring a mortgagor's equity of redemption for an adequate consideration. The mortgagee, Grace Scully, could have acquired said right by either purchase or release from the mortgagors, the Youngers. Furthermore, the facts, if known, might estop plaintiffs from asserting an interest in the property.

Plaintiffs offered no reasonable or lawful excuse for the delay of eleven years in asserting their claim. After moving from the property they had about three years to do so before the death of Grace Scully and Mr. Waldeck, the real estate agent who "handled her real estate business." Indeed, they did not make claim to an interest in the property until eight years after the death of the only persons, other than plaintiffs, who were familiar with the facts. The chancellor below, on the evidence presented, could not, with any degree of certainty, determine the rights of the parties and the merits of the controversy. In ruling the case he could only dismiss the petition because of laches on the part of plaintiffs. It will not be necessary to consider the defense of adverse possession.

The judgment should be affirmed. It is so ordered. All concur.